**ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Plaintiff,**

v.

**BROTHERHOOD OF RAILROAD TRAINMEN et al., Defendants.**

No. 61 C 854.

United States District Court
N. D. Illinois, E. D.

June 21, 1961.

On Motion For Injunction Pending Appeal June 22, 1961.

Paul R. Conaghan, Jerome Gilson, J. R. Marsh and Richard B. Ogilvie of Stevenson, Conaghan, Hackbert, Rooks & Pitts, Chicago, Ill., for plaintiff.

John J. Naughton, of Henslee & Henslee, Burke Williamson of Adams, Williamson & Turney, Chicago, Ill., for defendants.

PERRY, District Judge.

This matter coming on to be heard on the Verified Complaint and the Answers and Amendments thereto filed by defendants, and the Court having set the matter for hearing, having heard the evidence and the arguments of counsel, and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The jurisdiction of this Court is invoked by the plaintiff under the Constitution and laws of the United States, including the Judicial Code (28 U.S.C.A. §§ 1331 and 1337), the Railway Labor Act (45 U.S.C.A. § 151 et seq.) and the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.). The amount involved in this controversy exceeds the sum of $10,000.00, exclusive of interest and costs.

2. Plaintiff is a corporation duly organized and existing under the laws of Illinois and Indiana. Its general office and principal place of business are located at 208 South La Salle Street, Chicago, Illinois. It is a common carrier engaged in interstate commerce by railroad, is a "carrier" within the meaning of that term as defined in the Railway Labor Act, and is subject to the provisions of that Act and of the Interstate Commerce Act.

3. Plaintiff owns and operates a railroad system in interstate and intrastate commerce which serves the industrial concentration of metropolitan Chicago, Illinois, where it has many miles of tracks. It has a substantial investment in railroad facilities, cars, and locomotives. It employs approximately 5,000 persons.

4. Plaintiff's railroad system is an integral part of the nationwide railway systems of the United States, and connects and interchanges freight with thirty-three common carriers by rail which enter the City of Chicago. Plaintiff renders important railroad service to thousands of shippers annually, and serves 600 or more industries for which the plaintiff provides terminal and switching facilities in the metropolitan Chicago area. Among these are the United States Steel Corporation, which owns the plaintiff.

5. The defendant Brotherhood of Railroad Trainmen (hereinafter called the BRT) is an unincorporated association with headquarters in Cleveland, Ohio. It is a labor organization, national in scope, and is subject to the provisions of the Railway Labor Act. The BRT is the exclusive collective bargaining representative for the class of approximately 1200 employees of plaintiff in service as Switchmen, Road Brakemen, Switch Tenders, Car Retarder Operators, and Yardmasters.

6. The defendant Brotherhood of Locomotive Firemen and Enginemen (hereinafter called the BLFE) is an unincorporated association with headquarters in Cleveland, Ohio. It is a labor organization, national in scope, and is subject to the provisions of the Railway Labor Act. The BLFE is the exclusive collective bargaining representative for the class of approximately 400 firemen employed by the plaintiff.

7. The defendant Order of Railway Conductors and Brakemen (hereinafter called the ORCB) is an unincorporated association with headquarters in Cedar Rapids, Iowa. It is a labor organization, national in scope, and is subject to the provisions of the Railway Labor Act. The ORCB is the exclusive collective bargaining representative for the class of approximately 55 road conductors of the plaintiff.

8. The individual defendants are joined as parties to this suit in their individual capacity, in their capacities as representatives of the aforesaid classes of employees of plaintiff, and in their capacities as members and as representatives of their respective labor organizations and the membership of such organizations. These individuals have a joint and common interest with, and can and do fairly and adequately represent said classes and members of defendants BRT, ORCB, and BLFE, employed by plaintiff, who are defendants in this action. These

individuals are also officials of, and can and do fairly and adequately represent their respective defendant labor organizations and the memberships of such organizations.

9. The majority of the members of the BRT, ORCB, and BLFE, employed by plaintiff, and the majority of the aforesaid classes of employees of the plaintiff represented by said organizations, have an interest which is joint and common, and there are common questions of law and fact affecting their rights and the relief sought. They are too numerous to be made individual defendants herein and it is impracticable to bring them all before this Court.

10. The dispute between the parties concerns private non-contributory pensions supplemental to Railroad Retirement Act benefits. At the present time no pension plan is in effect covering retiring members of defendants BRT, ORCB, and BLFE now employed by plaintiff and retiring employees of the classes of employees of the plaintiff represented by the labor organizations; provided, however, that members of the BLFE who are working as engineers and who might now retire would obtain the benefits of the Pension Plan presently applicable to engineers. The most recent Plan (II–B) which heretofore covered members of said defendants and the classes of employees of plaintiff represented by said labor organizations expired by its terms October 31, 1959. The first non-contributory pension plan between the defendants, BRT, ORCB, and BLFE was for a 21-year period which expired October 31, 1957. That Plan, like the non-contributory Pension Plan which expired October 31, 1959, was included in the collective bargaining agreements between the plaintiff and each of the defendants BRT, ORCB, and BLFE on behalf of the respective class or craft of the plaintiff's employees represented by such labor organization. Such employees who retired during Plan II–B have continuously received and are now receiving Plan benefits with this exception: in a few instances increases received by employees under the Railroad Retirement Act have resulted in the elimination of all benefits received under Plan II–B. Since October, 1959, plaintiff has repeatedly offered and continues to offer voluntarily to extend Plan II–B for one, two, or three years, at defendants' election, to all persons presently employed by plaintiff who are represented by defendants BRT, ORCB, and BLFE, and for all persons formerly employed by plaintiff and formerly represented by said defendants who have retired since October 31, 1959. Such voluntary extension of existing Plans for prescribed periods has been accepted by all other labor organizations representing persons employed by plaintiff, 13 organizations in all. Defendants BRT, ORCB, and BLFE have rejected extension of pension coverage for such periods, but offered to make short extensions thereof.

11. Defendants BRT, ORCB, and BLFE now seek pension benefits different from and in addition to those available under Plan II–B. On October 1, 1959, pursuant to Section 6 of the Railway Labor Act, said defendants each served notice on the plaintiff proposing to add the following provision to the collective agreements then existing between the parties:

"Kindly consider this as a thirty (30) day notice under the provisions of Section 6 of the amended Railway Labor Act to extend the current Non-Contributory Pension Agreement [II–B] between the Elgin, Joliet and Eastern Railway Company and the [BRT, ORCB, and BLFE] effective November 1, 1957, until such date when the United States Steel Workers reach an agreement on a Non-Contributory Pension Plan, after which date, the above referred to Organization [s] shall have the option of substituting the new pension plan (being negotiated by the United States Steel Workers) in place of the pension plan now in effect covered by the aforementioned pension agreement; and/or also have the option to renew, modify, or

change the above referred to pension agreement as may be deemed advisable."

The three defendant labor organizations requested joint handling of their notices, and this procedure was followed between the plaintiff and the three labor organizations in the collective bargaining conferences which followed.

12. In the collective bargaining conferences the carrier was represented by Paul H. Verd, its Vice President—Personnel, as its principal negotiator. Mr. Verd was authorized by the plaintiff at such conferences only to grant extensions of the existing pension agreement (Plan II–B) for periods of three years, two years, or one year, and he had no authority to grant an indefinite extension or an extension for less than one year. Mr. Verd lacked authority to approve any pension plan other than Plan II–B for any period whatever, and any other plan would have had to be a plan which would be approved both by the Board of Directors of the plaintiff and by the Board of Directors of the United States Steel Corporation. At the time of the Section 6 Notice on October 1, 1959 by the BRT, ORCB, and BLFE a strike was in progress by the employees of the United States Steel Corporation represented by the United States Steel Workers. That strike was settled about January 1, 1960, and a written memorandum of settlement included a statement of improvements to be made in the non-contributory pension plan in effect between the United States Steel Corporation and its employees represented by the United States Steel Workers. A revised form of the pension agreement itself was available prior to May 4, 1960. An adaptation of this latter plan for employees of railroads owned by the United States Steel Corporation was available in detail prior to July 29, 1960. Officers of the BRT, ORCB, and BLFE during the first six months of 1960 from time to time requested Mr. Verd to obtain copies of all of this material and to make it available to them for the purpose of collective bargaining conferences. Mr. Verd replied that he must wait for this material to be sent from the "East." Thereupon the officers of the defendant labor organizations themselves obtained copies of this material through their own sources, had it available, and offered it to Mr. Verd at a joint conference on July 29, 1960. Mr. Verd refused to accept the material or to bargain concerning it. At the joint conference had by the parties on November 30, 1960 officers of the BRT, ORCB, and BLFE had a complete copy of a proposed non-contributory pension plan based on the non-contributory pension plan then in effect between the United States Steel Corporation and its employees represented by the United States Steel Workers, which Plan is referred to as Plan II–CR. Copies of this Plan were offered to Mr. Verd but he refused to accept them or to discuss such a Plan with the defendants. Mr. Verd did not discuss the provisions of Plan II–CR until the joint conference of February 23, 1961, at which time he had obtained and had available copies of Plan II–CR.

13. During all of the collective bargaining conferences with the defendants Mr. Verd was of the opinion that he was not required by the Railway Labor Act to bargain with the employees of the plaintiff concerning the Pension Plan sought by the employees. However, he did in fact bargain upon said Plan and so did all of the defendants until final hearing herein.

14. During the collective bargaining conferences officers of the BRT, ORCB, and BLFE urged the plaintiff to restore or to increase benefits theretofore paid or being paid to employees of the plaintiff who had retired from the service of the plaintiff prior to the expiration of Plan II–B on October 31, 1959, but such discussions were not treated by the officers of the defendant labor organizations as collective bargaining under the Railway Labor Act. Neither the Section 6 Notices served by the labor organizations nor the strike ballots taken by them referred to retired employees. Officers of the BRT, ORCB, and BLFE never at any time threatened to strike against the

plaintiff on account of the position of such retired employees. Mr. Verd never at any time advised the labor organization representatives that he was not required to discuss retired employees with them and, on the contrary, he discussed the position of such retired employees with the representatives of the defendant labor organizations.

15. The officers of the BRT, ORCB, and BLFE had full authority to negotiate to a conclusion the dispute with the plaintiff concerning the non-contributory pension plan which they sought. All of said defendants and the plaintiff have all bargained in good faith. They have simply been unable to reach an agreement.

16. After the third joint conference between plaintiff and defendants BRT, ORCB, and BLFE without reaching agreement, defendants requested that the National Mediation Board intervene. On August 22, 1960 the National Mediation Board advised that it had taken jurisdiction. Thereafter Mediators assigned by the National Mediation Board to the case from time to time met with the parties separately or jointly, but no settlement was reached. By letter dated March 8, 1961 the National Mediation Board proffered arbitration, which plaintiff accepted by letter dated March 9, 1961. On March 10, 1961 defendants BRT, BLFE, and ORCB jointly rejected arbitration. By letters dated March 13 and March 16, 1961, the National Mediation Board formally terminated its mediation services.

17. Further joint conferences were had between the parties on April 19, 21, and 24, 1961, but no settlement of the dispute was reached.

18. The National Mediation Board on May 16, 1961 sent telegrams to the plaintiff and to the Presidents of the BRT, BLFE, and ORCB as follows:

"Washington DC 16 217P EDT 1961 May 16 P M 1 49 P R Verd, VP Pers Elgin Joliet & Eastern Railway Co 208 South LaSalle St. Chgo

"Re Case A–6317 EJ&E, BLF&E, ORC&B and BRT. Board Is Informed Organizations Have Set Strike Date on EJ&E For 6 . AM Saturday 5–20–61. NMB Has Determined That In The Public Interest Further Conferences Should Be Held Under Board's Auspices In This Dispute. NMB Therefore Requests BLF&E, ORC&B and BRT To Defer Strike Action As Above Stated Pending Such Conferences. Mediator Wallace Rupp Now In Chicago Is Prepared To Meet Parties Tomorrow 5–17–61. Your Prompt Reply And Advice Of Concurrence In This Request Is Expected. By Direction Of The National Mediation Board.

"Joint Verd, Kennedy, Gilbert, Wagner, Rupp

"E C Thompson Exec Secy NMB"

On May 17, 1961 the plaintiff agreed to meet with Mediator Rupp. On May 17, 1961 the following telegram was received by the plaintiff from the National Mediation Board:

"Washington DC 1961 May 17 AM 92

"Paul H. Verd, VP Pers Elgin Joliet & Eastern Railway Co. 208 South LaSalle St. Chgo

"Following telegram received this date from Presidents Gilbert Kennedy and Wagner 'Rutel May 16 ORC&B, BRT and BLF&E dispute with EJ&E formerly Case A–6317. We are agreeable to assigning officers to meet with Mediator Wallace Rupp on May 17 but unwilling to postpone strike date scheduled for 6 AM May 20. Consideration can be given towards postponement of date pending results of Mediator. Grand Lodge Officers Harris, Grady and Hampton may be contacted in Chicago offices. Please advise' Mediator Rupp will contact representatives of all parties today

"EC Thompson Exec Secy NMB"

On May 17, 1961 plaintiff met with Mediator Rupp. Mediator Rupp reviewed with plaintiff's officials the current status of the dispute and also ascertained plain-

**164**

tiff's position. In addition, Mediator Rupp advised that he would meet with defendants on May 18, 1961 and that he would thereafter contact the plaintiff. On May 18, 1961 the National Mediation Board telegraphed the parties as follows:

"Washington DC 18 1047 A EDT 1961 May 18 AM 10 34 Paul H. Verd, VP-Pers Elgin Joliet & Eastern Railway Co 208 South LaSalle St Chgo

"Retel 5–16–61 CASE A–6317 EJ&E, BLF&E, ORC&B, BRT Requesting Representatives Of All Parties To Meet With Mediator Wallace Rupp And Asking Organizations To Defer Strike Date Scheduled For 6 AM 5–20–61 Pending Such Conferences. Board Desires To Make It Clear That In Making Mediator Rupp Available For Such Meetings It Asserts No Jurisdiction Under Sections 5 or 6 Of The Railway Labor Act Over This Dispute. Please Acknowledge. Joint Verd, Gilbert, Wagner Kennedy

"E. C. Thompson Exec. Secy NMB."

On May 18, 1961, at about 4:00 p. m., Mediator Rupp met with officials of defendant organizations. Thereafter, on the same day, Mediator Rupp met with the plaintiff. No settlement of the dispute was reached. The defendant labor organizations thereupon continued their plans for a strike to begin May 20, 1961 at 6:00 a. m.

19. The plaintiff filed this present suit on May 19, 1961. On the same day this Court entered a Temporary Restraining Order, enjoining the threatened strike. By agreement of the parties the Temporary Restraining Order was continued in effect pending the final action of this Court after hearing on the merits on the complaint and on the answers filed by the defendants. Such hearings were had by this Court on June 9, 12 and 17, 1961.

20. Since the filing of this suit on May 19, 1961, the parties have continued to meet and to discuss the subject matter of this dispute.

Conclusions of Law

■ 1. The Complaint seeks to have this Court review the course of collective bargaining had by the parties hereto under the Railway Labor Act, a review which the Court may not make consistent with the plan adopted by the Congress in the Railway Labor Act for maintaining peaceful labor relations in the railroad industry. The Complaint therefore presents a non-justiciable issue, and this Court lacks jurisdiction over the subject matter.

Although this Court concludes that the Complaint presents a non-justiciable controversy, it nevertheless makes additional conclusions of law as hereinafter set forth.

2. The parties have exhausted all administrative remedies to prevent the threatened strike.

3. The National Mediation Board terminated its mediatory services under the Railway Labor Act on March 16, 1961 and did not thereafter resume mediatory services under the Railway Labor Act in this dispute. Its resumption of mediation was agreed upon condition that defendants did not waive their right to strike pursuant to notices already served.

4. The defendants have not bargained or sought to bargain collectively on behalf of any persons with respect to whom the plaintiff has no duty to bargain collectively under the requirements of the Railway Labor Act. The defendants have not sought by strike threat to obtain increased pension payments for employees formerly represented by them or for employees separated from the service of the plaintiff.

■ 5. The subject of non-contributory pension plans is included in rates of pay, rules, and working conditions under the Railway Labor Act and is a subject of mandatory bargaining under the Railway Labor Act.

6. The defendants have not violated any of the provisions of the Railway Labor Act.

■ 7. Once the National Mediation Board Terminates its services and so

notifies the parties it has no power to revoke that notice and resume mediation, thus depriving the parties of self help unless the employers and the employees agree to such resumption.

8. Resumption of bargaining by the parties with the aid and cooperation of a Mediator does not interfere with the right of either party to self help under the Railway Labor Act.

9. The dispute between the parties concerning the pension plan is a "major dispute" under the Railway Labor Act as defined by Federal courts. A dispute over a non-contributory pension plan is a dispute concerning changes in rates of pay, rules, or working conditions and therefore a proper dispute for bargaining under the provisions of the Railway Labor Act.

10. The fact that loss would be suffered by the plaintiff and others in the event the classes or crafts of employees of the plaintiff represented by the BRT, BLFE, and ORCB should withdraw from the service of the plaintiff is irrelevant and immaterial.

11. The proposed withdrawal from service of the plaintiff by the employees represented by the BRT, BLFE, and ORCB is in all respects lawful under the Railway Labor Act.

12. This Court is deprived of jurisdiction to issue an injunction in this action by the provisions of the Norris-LaGuardia Act (29 U.S.C.A. §§ 101–115), unless and until the defendants are shown to be in violation of the Railway Labor Act (45 U.S.C.A. § 151 et seq.) or the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.).

13. The issues in this case are found against the plaintiff and for the defendants, and the plaintiff is not entitled to the relief, or any part thereof, which it prays for in its Complaint. The defendant not having been shown to have violated or threatened to violate the aforesaid Railway Labor Act or Interstate Commerce Act.

14. The Temporary Restraining Order heretofore entered herein on May 19, 1961 to enjoin the threatened strike should be dissolved.

15. The defendants are entitled to receive from the plaintiff recompense for loss, expense, or damage caused to the defendants by the issuance of the Temporary Restraining Order herein on May 19, 1961, including all reasonable costs (together with reasonable attorneys' fees) and expense of defense against the order and against the granting of injunctive relief sought in this proceeding and subsequently denied by this Court, and a hearing should be had before this Court to determine the amount thereof.

16. This action should be dismissed at plaintiff's costs, and an appropriate judgment should be entered for this purpose.

### Final Decree

This cause coming on to be heard on the Verified Complaint of the plaintiff filed herein on May 19, 1961, on the Answer Of Certain Defendants To Verified Complaint filed June 6, 1961, and on the Answer To Complaint filed June 8, 1961 by the other defendants in this cause; and

It appearing that a Temporary Restraining Order enjoining a threatened strike by the defendants was entered herein on May 19, 1961 and has been continued by agreement of the parties; and

This cause having been heard on the merits on the said Complaint and Answers on June 9, 12, and 17, 1961, and the Court having heard the testimony and having considered the written evidence, offered by the parties, and having heard the arguments of counsel; and

The Court having tried this action upon the facts without a jury and having heretofore found the facts specially, and having heretofore stated separately its conclusions of law thereon, and having directed the entry of an appropriate judgment;

It Is Hereby Ordered, Adjudged, And Decreed that:

1. The Temporary Restraining Order enjoining the threatened strike originally

set for May 20, 1961, which Temporary Restraining Order was heretofore entered herein on May 19, 1961, be and the same is hereby dissolved effective immediately, subject to the condition that no strike by the defendants over the subject matter of the dispute involved in this cause shall become effective prior to 6:00 a. m., Central Daylight Saving Time, on Saturday, June 24, 1961.

2. The plaintiff shall recompense, and pay to, the defendants herein their loss, expense, or damage caused to the defendants by the issuance of the Temporary Restraining Order herein on May 19, 1961, including all reasonable costs (together with reasonable attorneys' fees) and expense of defense against the order and against the granting of injunctive relief sought in this proceeding and subsequently denied by this Court. For the purpose of determining the amount thereof, this Court reserves jurisdiction of this cause for this purpose only. Hearing hereon will be set upon motion when time for appeal has passed. If appeal is taken hearing will be set after final mandate herein.

3. Except for the reservation of jurisdiction for the purpose stated in the preceding paragraph, judgment is entered against the plaintiff and for the defendants, and this action is dismissed at plaintiff's costs.

### On Motion For Injunction Pending Appeal

This matter coming on for a hearing upon plaintiff's motion for an injunction pending appeal, and the plaintiff having duly filed a Notice of Appeal and Appeal Bond, and the Court being fully advised in the premises, makes the following findings of fact and conclusions of law as reasons for the issuance of its order granting an injunction.

### Findings of Fact

1. Plaintiff, a common carrier, owns and operates a railroad system in interstate and intrastate commerce beginning at Porter, Indiana, and entering Hartsdale, Gary, Indiana Harbor and Whiting, Indiana; and South Chicago, Chicago Heights, Joliet, West Chicago, Barrington, North Chicago and Waukegan, Illinois.

2. Plaintiff's system serves and circumscribes the vast industrial concentration of metropolitan Chicago, Illinois. It is an integral part of the nationwide railway systems of the United States, and connects and interchanges freight with thirty-three common carriers by rail which enter the City of Chicago. It provides terminal and switching facilities for more than 600 industries and renders railroad service to thousands of shippers annually. It carries large quantities of United States national defense supplies and equipment, and other freight needed for the maintenance of the health, comfort and welfare of the public.

3. If defendants were to strike during the pendency of plaintiff's appeal, such action would be seriously disruptive, in that the public is not prepared for such action and the industries served by plaintiff could not protect themselves from interference with services rendered to them.

4. The Court has inquired into, and considered the equities of the parties herein and has further considered the equities of the general public as they would be affected by this matter. The Court has balanced the equities and found the equities of the general public greater than those of the defendants herein.

5. The Court finds that its judgment and decree heretofore entered herein on the issues in dispute include matters of first impression in the United States Courts and no settled rules of law have heretofore been laid down concerning these issues.

6. The Court accepts the offer of the plaintiff made in open court that during the pendency of this appeal the plaintiff will put into effect Pension Plan II B retroactive to November 1, 1959 covering members and retired members of defendant organizations.

### Conclusions of Law

The Court makes the following conclusions of law:

1. The jurisdiction of this Court to grant an injunction during the pendency of this appeal exists under the provisions of Rule 62(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the Judicial Code and the inherent powers of the Court.

2. The jurisdiction of this Court in granting an injunction during the pendency of this appeal under the provisions of Rule 62(c) is not limited by the provisions of the Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.)

### Order Under 62(c)

This matter having come on for a hearing upon plaintiff's motion for an injunction pending appeal, and the plaintiff having duly filed a Notice of Appeal and Appeal Bond, and the Court being fully advised in the premises,

It is hereby Ordered that an injunction issue under Rule 62(c) of the Federal Rules of Civil Procedure because of the potential disruption to commerce, and, accordingly, it is Further Ordered that until the Court of Appeals of the Seventh Circuit decides plaintiff's appeal herein, the defendants, members of defendant organizations and their officers, agents, servants, employees and attorneys, and all persons employed by plaintiff on its railroad, and any other persons in active concert and participation with them, be and they are hereby restrained from allowing, ordering, authorizing, encouraging, inducing, approving, continuing, starting or permitting any strike on plaintiff's railroad.

It is Further Ordered that the Bond heretofore filed by plaintiff on May 19, 1961 remain in full force and effect and, in addition thereto, the plaintiff file an additional bond of $45,000 which bonds together shall stand as the Appeal Bond herein and bond for the issuance of this injunction. Surety upon the additional $45,000 bond is waived. A further condition of the issuance of this injunction is that the plaintiff put into effect Pension Plan 2 B from and after November 1, 1959.

Nothing herein shall be construed to require an individual employee to render labor or service without his consent, nor shall anything herein be construed to make the quitting of his job by any individual employee an illegal act. Said $45,000 bond is labeled appeal bond but is both appeal bond and injunction bond.