456 F.2d 483
 67 Lab.Cas. P 12,405
 UNITED STATES STEEL CORPORATION
v.
UNITED MINE WORKERS OF AMERICA, Appellant in No. 19454, et al.
Appeal of DISTRICT 4, UNITED MINE WORKERS OF AMERICA, in
Nos. 19455, 19460, 19478.
Appeal of DISTRICT 5, UNITED MINE WORKERS OF AMERICA, in
Nos. 19456, 19461, 19479.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 6321, in
No. 19457.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 1248, in
No. 19458.
JONES & LAUGHLIN STEEL CORPORATION
v.
UNITED MINE WORKERS OF AMERICA, Appellant in No. 19459, et al.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 2399 in
No. 19462.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 762 in No. 19463.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 6159 in
No. 19464.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 6330 in
No. 19465.
BETHLEHEM MINES CORPORATION
v.
UNITED MINE WORKERS OF AMERICA, Appellant in No. 19466, et al.
Appeal of DISTRICT 2, UNITED MINE WORKERS OF AMERICA, Owen
F. Slagel, President, in No. 19467.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 1386,
Charles Krawetz, President, in No. 19468.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 850,
Edward F. Monborne, President, in No. 19469.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 1368,
Thomas Watson, President, in No. 19470.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 6394,
Joseph T. Mucko, Jr., President in No. 19471.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 6411,
Robert C. Brown, President, in No. 19472.
Appeal of DISTRICT 5, UNITED MINE WORKERS OF AMERICA,
Michael Budzanoski, President, in No. 19473.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 1190,
Charles Washlack, President, in No. 19474.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 2874,
Stanley C. Werstler, President, in No. 19475.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 1197,
John A. Dziak, President, in No. 19476.
REPUBLIC STEEL CORPORATION
v.
UNITED MINE WORKERS OF AMERICA, Appellant in No. 19477, et al.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 9873 in
No. 19480.
Appeal of UNITED MINE WORKERS OF AMERICA LOCAL NO. 688 in No. 19481.
 Nos. 19454-19481.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 1, 1971.
Decided Feb. 3, 1972.
 
 Lloyd F. Engle, Jr., Wilner, Wilner & Kuhn, Pittsburgh, Pa. (Willard P. Owens, Washington, D. C., on the brief), for appellants.
 Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa. (Clyde W. Armstrong, Ralph T. De Stefano, Thorp, Reed & Armstrong, Pittsburgh, Pa., Nicholas Unkovic, Harley N. Trice, II, Pittsburgh, Pa., on the brief), for appellee.
 Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Appellants, labor unions and individual union members, appeal from the order of the district court denying their motion for costs, expenses, and attorney's fees. United States Steel Corp. v. United Mine Workers of America, 317 F.Supp. 1070 (W.D.Pa.1970). The dispute had its genesis in actions filed by the appellees, United States Steel Corporation, Jones & Laughlin Steel Corporation, Bethlehem Mines Corporation and Republic Steel Corporation seeking injunctions against work stoppages which they alleged were in violation of union contracts containing "Settlement of Local and District Disputes" grievance-arbitration procedures. The steel companies contended that by virtue of Sec. 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1971), the work stoppages should be enjoined pending resolution of the underlying disputes through the contract grievance-arbitration procedures. After a two-day hearing the district court entered an order in each case granting a preliminary injunction. Each order contained the language:
 
 
 2
 "Bond in the amount of $1,000.00 has been approved and filed with the Court by plaintiff."
 
 
 3
 A separate bond, identical in form, was filed by each plaintiff. The condition of the bond was in each case as follows:
 
 
 4
 "WHEREAS, plaintiff has applied for a Preliminary Injunction against defendants, enjoining and restraining them from the commission of certain acts, as more particularly described in the Complaint; NOW, the condition of this obligation is such, that the plaintiff shall be liable to the defendants for such costs and damages, not exceeding the sum of $1,000.00, as defendants or any other person may sustain by reason of the Preliminary Injunction, if the Court finally decides that plaintiff is not entitled thereto."
 
 
 5
 Neither the orders granting preliminary injunction nor the bond in any case made reference to the authority under which the court required that the bond be posted. The record discloses no opportunity for the defendants to examine the bond prior to its approval and filing.
 
 
 6
 The applications for preliminary injunctions were strenuously opposed by the defendants who contended that the work stoppage did not fall within the coverage of the contract grievance-arbitration provisions. When the orders were entered defendants promptly appealed. On their motion we summarily reversed. Bethlehem Mines Corporation v. United Mine Workers of America, No. 19,040 (3rd Cir., filed July 2, 1970). That reversal was on the ground that the district court because of an erroneous view of the applicable law had effectively denied the parties the opportunity to develop their respective positions in the abbreviated hearing which it conducted. The preliminary injunction was, therefore, improvidently granted. We remanded "without prejudice to a request for a hearing de novo on the application for a preliminary injunction." The order on remand specified, "Each side to bear its own costs."
 
 
 7
 After remand the plaintiffs renewed their request for a preliminary injunction and the district court set the matter down for a de novo hearing commencing July 9, 1970. Instead of proceeding with the hearing, however, the parties with the approval of the district court entered into a stipulation providing:
 
 
 8
 "At the hearing, counsel for the respective defendants have represented to the Court that, to their knowledge, no picketing, work stoppage or strike exists at present and none is known to be anticipated in the immediate future. Also, counsel for the respective parties have agreed to an indefinite continuance of the hearing upon the oral stipulation that plaintiff, in good faith, will utilize its best efforts to comply with the Federal Coal Mine Health and Safety Act of 1969 and that counsel for the respective defendants, based upon the conditions in the mines as they are known to exist at present, will counsel the officers and membership of defendant-unions to refrain from any work stoppage or picketing at plaintiffs' mines.
 
 
 9
 NOW, THEREFORE, this 10th day of July, 1970, in accordance with the representations and stipulations of counsel, it is hereby Ordered that the hearing upon plaintiffs' application for preliminary injunction be continued until further notice by the Court."
 
 
 10
 The effect of this stipulation, although it purported to continue the hearing on plaintiffs' application for a preliminary injunction, was to end the lawsuit for all practical purposes. By then the work stoppages complained of had ceased.
 
 
 11
 On August 14, 1970 the defendants moved for the award of reasonable costs, expenses and attorneys' fees. This claim was based upon Sec. 7 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 107 (1971) which in revelant part provides:
 
 
 12
 "No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.
 
 
 13
 The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity."
 
 
 14
 At the hearing on this motion the parties stipulated the amount of expenses incurred and the reasonable value of legal services rendered in opposing the preliminary injunctions and in procuring their reversal by this court.[1] The stipulated fees and expenses exceed $11,350.00. The four bonds total $4,000.00. The district court denied the motion in its entirety "without prejudice to [defendants'] right to re-submit similar motions should the outcome of the proceedings warrant the same." This appeal followed.
 
 
 15
 The appellees moved before this court to dismiss the appeal on the ground that it was interlocutory. Another panel denied that motion without opinion, apparently on the ground that the order appealed from, although in form interlocutory, was in practical effect final on the issue here presented since no further proceedings would take place in the district court and was therefore appealable under the "collateral order" doctrine. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Greene v. Singer Co., No. 71-1835 (3rd Cir., filed Nov. 2, 1971). Thus we must treat the appeal as a final decision denying defendants' motion for costs, expenses and attorneys' fees.
 
 
 16
 Since the reasonableness of the requested amounts has been stipulated the only question before us is whether on legal grounds the district court properly refused to make an award. Appellees advance several legal contentions in support of that conclusion.
 
 
 17
 First, appellees contend that because they brought suit under Sec. 301 of the Labor-Management Relations Act the procedural provisions of Sec. 7 of the Norris-LaGuardia Act are inapplicable. They urge that there is no warrant in law outside Sec. 7 for the award of counsel fees incurred in setting aside an injunction improvidently issued. As authority for the proposition that Sec. 7 is inapplicable, appellees cite Boys Markets, Inc. v. Local 770, Retail Clerks, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).
 
 
 18
 Appellees read far too much into the Boys Markets opinion. In expressly overruling its earlier decision in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), and in approving the analysis of the Sinclair dissent, the Supreme Court worked out a careful and narrow accommodation between the earlier Norris-LaGuardia Act and the later Labor-Management Relations Act. It held only that the express prohibitions against certain specific injunctions contained in Sec. 4 of Norris-LaGuardia, 29 U.S.C. Sec. 104, were deemed not to bar injunctions necessary to accomplish the purposes of the Labor-Management Relations Act through contract arbitration. The Court very carefully in Part V of the opinion, 398 U.S. at 253-255, 90 S.Ct. 1583, made clear that it was dealing only with the prohibitions of Sec. 4 of Norris-LaGuardia, and then only in cases where the court first holds that a strike is over a grievance which both parties are contractually bound to arbitrate. The opinion says nothing about the procedural steps which must be taken in making that determination or about the safeguards which must surround the issuance of a preliminary injunction.
 
 
 19
 The thrust of Sec. 4 of the Norris-LaGuardia Act is quite different from that of Sec. 7. The former is a list of injunctive orders which the federal district courts are flatly prohibited from entering. The latter is essentially a procedural section. It prohibits the entry of an injunction growing out of a labor dispute
 
 
 20
 "except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered . . .
 
 
 21
 Such hearing shall be held after due and personal notice . . ." 29 U.S.C. Sec. 107.
 
 
 22
 Certainly the requirements of a verified complaint, notice and a hearing in open court in no way conflict with the policies of the Labor-Management Relations Act. Indeed Fed.R.Civ.P. 65(a) requires as much in any event, Sims v. Greene, 161 F.2d 87 (3rd Cir. 1947), though that was not so when Norris-LaGuardia was passed since the federal rules had not yet been enacted. It was the failure to afford a hearing comporting either with Sec. 7 or with Rule 65(a) which led to the summary reversal of the preliminary injunction when this case was first before us.
 
 
 23
 It may be argued that some of the specific findings of fact required by Sec. 7[2] are inappropriate for a Sec. 301 case. Obviously the Supreme Court thinks that most of them are quite appropriate, for in Boys Markets it quoted with approval the list of considerations bearing on the issuance of a Sec. 301 injunction first set forth in the Sinclair dissent.[3] The finding "[t]hat the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection," Sec. 7(e), 29 U.S.C. Sec. 107(e), probably would not be appropriate in a Sec. 301 case. But this does not mean that the entire section is inapplicable. It means only that as with Sec. 4 of Norris-LaGuardia Sec. 7 must be accommodated to the policy underlying Sec. 301.
 
 
 24
 For such an accommodation it is unnecessary to hold inapplicable to Sec. 301 cases those parts of Sec. 7 dealing with undertakings for loss, expense, or damage caused by the improvident or erroneous issuance of an injunction. It might be argued that by holding those parts of Sec. 7 applicable to Sec. 301 suits in the federal courts, we will impose a chilling effect on the resort by employers to the courts for enforcement of contract grievance-arbitration clauses. We hardly think so. In most cases the contract will be so clear one way or the other and the likelihood of damage to the union from a preliminary injunction requiring resort to contract arbitration so slight that the imposition of a Sec. 7 undertaking for loss, expense or damage caused by improvident or erroneous issuance will impose no significant burden. Fed.R.Civ.P. 65(c) imposes an injunction bond requirement in any case and the only difference between a Rule 65(c) bond and one issued pursuant to Sec. 7 that the appellees have called to our attention is that the latter includes as an element of damage a reasonable attorneys' fee. The attorneys' fee would be paid only if the preliminary injunction is found to have been improvidently or erroneously issued, that is, where the court did not hold a proper hearing or failed to make the factual determinations mandated by Part V of the Boys Markets opinion or where the court erroneously issued a preliminary injunction over a labor dispute not covered by the contract grievance-arbitration provision. In any of these circumstances no necessary accommodation between the policies of Norris-LaGuardia and of the Labor-Management Relations Act requires that the union be deprived of the award of counsel fees under Sec. 7.
 
 
 25
 Appellees also suggest that if we recognize a liability for attorneys' fees in the circumstances of this case we will be creating a conflict between labor law in the state courts and labor law in the federal courts which the Supreme Court in Boys Markets sought to avoid. This is not so in cases in which a preliminary injunction should properly have issued under Sec. 301 since attorneys' fees in those cases will not be awarded. As to cases where a preliminary injunction should not have issued, the recognition in Boys Markets that the Norris-LaGuardia Act is still in force may in many states[4] result in different law being applied depending on the state or federal forum. But that is what Congress intended when Norris-LaGuardia was passed and, as the Supreme Court makes clear in Boys Markets, Sec. 301 of the Labor-Management Relations Act suggests an accommodation, not a repeal.
 
 
 26
 Thus we hold that the provision in Sec. 7 that a plaintiff shall file an undertaking for loss, expense or damage, including costs, together with a reasonable attorneys' fee before a preliminary injunction issues in a labor dispute applies in the federal courts even when the injunction is sought pursuant to Sec. 301.
 
 
 27
 Next appellees contend that even assuming the applicability of Sec. 7 there may be no recovery here because the bond which was given was improper in form and in the absence of a proper bond the defendants have suffered damnum absque injuria. There is authority for appellees' position. International Ladies' Garment Workers' Union v. Donnelly Garment Co., 147 F.2d 246 (8th Cir. 1945), cert. denied, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972 (1945).
 
 
 28
 Analysis of appellees' position requires a subdivision into several questions.
 
 
 29
 1. Does the bond which was filed, properly construed, exclude liability for attorneys' fees?
 
 
 30
 2. If the bond, properly construed, does not exclude liability for attorneys' fees, is the liability of the principal, as distinguished from the surety, limited to the amount of the bond?
 
 
 31
 3. If the bond, properly construed, is simply inapplicable to liability under Sec. 7, does that section impose liability on the plaintiffs by its own operation in the absence of a bond?
 
 
 32
 The Donnelly case, which is the only authority more or less directly in point, answers each of these questions in appellees' favor. Donnelly possibly may be distinguished on the basis of the Eighth Circuit's finding that ". . . it is beyond question that the bonds in this case were not required by the court nor given by the plaintiffs pursuant to the provisions of the Norris-LaGuardia Act." 147 F.2d at 253. Here there is nothing in the record specifying on what authority the bonds were required and the district court did not reach that question. Appellees contend that the language of the undertaking "shall be liable to the defendants for such costs and damages" of necessity excludes liability for attorneys' fees. Besides the Donnelly case they cite for this proposition Madison Shipping Corp. v. National Maritime Union, 204 F.Supp. 22 (E.D.Pa.1962) and Duke Power Co. v. Greenwood County, 25 F.Supp. 419 (W.D.S.C.1938).[5] The authority relied upon in Madison Shipping is the Donnelly case. Duke Power relies upon the same federal authorities as does Donnelly. None of those authorities stands for the proposition that the word "damages" in a bond cannot include attorneys' fees. Rather, they stand for the proposition that as a matter of federal common law attorneys' fees are not a recoverable element of damages.
 
 
 33
 The case relied upon by the Donnelly and Madison courts and most often cited for the proposition that an injunction bond for costs and damages will not support a recovery of attorneys' fees is Heiser v. Woodruff, 128 F.2d 178 (10th Cir. 1942). Heiser relied upon Tullock v. Mulvane, 184 U.S. 497, 22 S.Ct. 372, 46 L.Ed. 657 (1902), and Oelrichs v. Spain, 82 U.S. 211, 21 L.Ed. 43 (1872). These cases make it clear that the issue is not the meaning of the word "damages" in the bond but whether as a matter of federal law attorneys' fees are ever recoverable as an element of damages. Tullock v. Mulvane, which involved a suit for specific performance, recognizes that if Kansas law were to be applied the bond would have sustained the award of attorneys' fees. Accepting Tullock v. Mulvane and Oelrichs v. Spain as correct statements of the federal common law with respect to the recovery of attorneys' fees as an element of damages whether or not a bond has been given, it is obvious that the federal common law was changed for labor disputes when Congress enacted Sec. 7 of the Norris-LaGuardia Act. Thus the fact that the bond did not track the language of Sec. 7 exactly should not be dispositive. Whatever the law is in other cases, in a labor dispute attorneys' fees incurred in defending against an application for an injunction which should not have been granted are a recoverable element of damages. If in a labor dispute the plaintiff seeking a preliminary injunction tenders and the court approves a bond for "costs and damages" that undertaking should be construed to include all the elements of damage which are recoverable under Sec. 7. Since International Ladies' Garment Workers' Union v. Donnelly Garment Co., supra, and Madison Shipping Corp. v. National Maritime Union, supra, are based upon a misinterpretation in Heiser of the holdings of Tullock v. Mulvane and Oelrichs v. Spain, we decline to follow these authorities insofar as they hold that the injunction bond for costs and damages may not be so construed.
 
 
 34
 This brings us to the question whether recovery should be limited to the amount of the bond. Here, again, appellees take comfort in the Donnelly case, which says:
 
 
 35
 "The weight of authority in the Federal courts is that a recovery in excess of the maximum amount stipulated in a judicial bond is not permissible. United Motors Service, Inc. v. Tropic-Aire, Inc., 8 Cir., 57 F.2d 479, 482, reviewing the prior decisions of this court and other Federal courts. And see Russell v. Farley, 105 U.S. 433, 437, 26 L.Ed. 1060; Meyers v. Block, 120 U.S. 206, 211, 7 S.Ct. 525, 30 L.Ed. 642; Lawrence v. St. Louis-San Francisco R. Co., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282." 147 F.2d at 253.
 
 
 36
 We can put to one side the surety's liability, for entirely different legal principles operate to limit its liability to the amount of its undertaking. Restatement of Security Sec. 195 (1941). The obligation of the principal, the plaintiff seeking injunctive relief, raises a different issue, and again the Eighth Circuit both in Donnelly and in United Motors Service v. Tropic-Aire, 57 F.2d 479 (1932), misapprehended the holdings of the Supreme Court cases on which it relied.
 
 
 37
 It was once very much in doubt whether an equity court could ever award damages. That doubt remained in England until the passage of the Chancery Amendment Act in 1858, commonly called Lord Cairn's Act, St. 21 & 22 Vict. c. 27, granting to the court of chancery jurisdiction to award damages in order to give complete relief in a case otherwise properly within its jurisdiction. See 1 J. Pomeroy, Equity Jurisprudence Sec. 237(e) (5th ed. 1941). The same doubt about the power of an English equity court to award damages existed in the United States. In Bein v. Heath, 53 U.S. (12 Howard) 168, 178-179, 13 L.Ed. 939 (1851). Chief Justice Taney wrote:
 
 
 38
 "A court proceeding, according to the rules of equity, cannot give a judgment against the obligors in an injunction bond when it dissolves the injunction. It merely orders the dissolution, leaving the obligee to proceed at law against the sureties, if he sustains damage from the delay occasioned by the injunction."
 
 
 39
 Russell v. Farley, 105 U.S. (15 Otto) 433, 445, 26 L.Ed. 1060 (1881), referring to Bein v. Heath, supra, rejected Chief Justice Taney's dictum, saying:
 
 
 40
 "Other cases are referred to by counsel of the appellants to sustain their position, but upon a careful examination we are not satisfied that they furnish any good authority for disaffirming the power of the court having possession of the case, in the absence of any statute to the contrary, to have the damages assessed under its own direction. This is the ordinary course in the Court of Chancery in England, by whose practice the courts of the United States are governed, and seems to be in accordance with sound principle."
 
 
 41
 The holding of Russell v. Farley, then, is that a court of equity can, in order to give complete relief, enter judgment on an injunction bond. The case also contains a dictum which has been fairly frequently cited for the proposition that the bond is the only source of the defendant's liability.
 
 
 42
 "Where no bond or undertaking has been required, it is clear that the court has no power to award damages sustained by either party in consequence of the litigation, except by making such a decree in reference to the costs of suit as it may deem equitable and just." 105 U.S. (15 Otto) at 437.
 
 
 43
 In United Motors Service v. Tropic-Aire, 57 F.2d at 482, the Eighth Circuit treated this dictum as a statement that in the absence of a bond no court could award damages for wrongfully obtaining an injunction. But in the context of Russell v. Farley it seems clear that no more was intended than to suggest that such an award was not within the jurisdiction of a court of equity.
 
 
 44
 Both in Donnelly and in United Motors Service reference is made to Minneapolis, St. P. & S. Ste. M. Ry. v. Washburn Lignite Coal Co., 254 U.S. 370, 41 S.Ct. 140, 65 L.Ed. 310 (1920). United Motors Service, 57 F.2d at 483, refers to Minneapolis, St. P. & S. Ste. M. Ry. v. Washburn Lignite Coal Co. as holding that in the absence of a bond damage arising from an injunction is damnum absque injuria. Actually the case holds no such thing. It dismisses a writ of error from the Supreme Court of North Dakota because of an adequate state ground of decision. The reference to the injunction bond is to the state court's application, or more properly misapplication, of the dictum in Russell v. Farley, supra.
 
 
 45
 Both Donnelly and United Motors Service cite Lawrence v. St. Louis-S. Fran. Ry., 278 U.S. 228, 49 S.Ct. 106, 73 L.Ed. 282 (1929). The holding in Lawrence is that the court need not entertain an action to recover on the bond prior to the hearing on a permanent injunction. There is a one sentence dictum, citing Russell v. Farley, supra, and Minneapolis, St. P. & S. Ste. M. Ry. v. Washburn Lignite Coal Co., supra, "If it had not, when entering the interlocutory decree, required that the bond be given, no damages could have been recovered on the dissolution of the injunction." 278 U.S. at 233, 49 S.Ct. at 108. No significance can be attached to this dictum since it, like the reference in the Minneapolis Ry. case, refers to a proceeding in a state court and hence, in all likelihood, to a matter of state court equity practice similar to the question of federal court equity practice involved in Russell v. Farley, supra.
 
 
 46
 No Supreme Court authority which has been called to our attention holds that the liability of a plaintiff who has been improperly granted an injunction is limited to the amount of the bond he has furnished, and we find the authority of International Ladies' Garment Workers' Union v. Donnelly Garment Co., supra, on this issue unpersuasive. Cf. Atomic Oil Co. of Oklahoma v. Bardahl, 419 F.2d 1097 (10th Cir. 1969).
 
 
 47
 The "damnum absque injuria" approach of the Donnelly case would rule out any liability for wrongfully obtaining an injunction in any case where the court did not require the posting of a bond. It has often been said that as a rule there is no liability in tort for the damages caused by the wrongful suing out of an injunction. See, e. g., Benz v. Compania Naviera Hidalgo S.A., 205 F.2d 944, 948 (9th Cir. 1953); 42 Am. Jur.2d Injunctions Sec. 359 (1969); 43 C.J.S. Injunctions Sec. 281 (1945). This rule is an aspect of the more general rule that no action lies against a party for resort to civil courts, and it is subject to the same qualification that an action will lie even in the absence of a bond for proceeding maliciously without probable cause. See, e. g., Dacey v. New York County Lawyers' Association, 423 F.2d 188, 195 (2nd Cir. 1969); Soffos v. Eaton, 80 U.S.App.D.C. 306, 152 F.2d 682 (1945); Melvin v. Pence, 76 U.S.App.D.C. 154, 130 F.2d 423 (1942); American Optometric Association v. Ritholz, 101 F.2d 883 (7th Cir. 1939); Peckham v. Union Finance Co., 60 App.D.C. 104, 48 F.2d 1016 (1931); Mayflower Industries v. Thor Corp., 15 N.J.Super. 139, 152, 83 A.2d 246, 252 (Ch.Div.1951); F. Harper & F. James, The Law of Torts Sec. 4.8 at 326 (1956). Probably the possibility of a recovery against a plaintiff who had proceeded without probable cause was the reason why Congress added the last sentence of Sec. 7 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 107:
 
 
 48
 "But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity."
 
 
 49
 Thus the civil action for proceeding maliciously without probable cause still exists in labor dispute cases.
 
 
 50
 The question, then, is how far Congress intended to go beyond the remedy which existed at common law. Section 7 does say that an amount shall "be fixed by the court," but in the context this language seems to modify the words "adequate security" rather than the word "undertaking." Read thus, the amount to be fixed by the court refers to the limit of liability of a surety or the amount of collateral security required in the absence of a surety. The plaintiff's required undertaking would then read "sufficient to recompense those enjoined for any loss, expense, or damage . . . including all reasonable costs (together with a reasonable attorney's fee) and expenses of defense against the order . . .." Such a reading would permit recovery against the plaintiff in excess of the amount fixed in the bond. The language "[n]o temporary injunction shall be issued except on condition" seems to make the undertaking to recompense for damage an implied condition of every labor dispute injunction. Such a reading would permit recovery even in the absence of a bond. One district court considering that issue wrote:
 
 
 51
 "While the statute provides for a bond, and, while it is manifestly true that the bond did not comply with the provisions of the statute, it might be that the labor unions, or, parties, would be entitled to their expenses, and attorney's fees, in accordance with this statute, even though no bond were given, but the statute does not so say. A liberal construction though should be allowed to accomplish its purpose. It could hardly mean that expenses were to be allowed, only, if the bond were given." Houston & North Texas M. F. Lines v. Local No. 745, Teamsters, 27 F.Supp. 262 (N.D.Tex.1939).
 
 
 52
 The quote is a dictum only and a similar dictum, citing the Houston & North Texas M. F. Lines case, appears in Jamaica Lodge 2188, of Broth. of Railway and SS Clerks, Freight Handlers, Exp. and Station Emp. v. Railway Express Agency, Inc., 200 F.Supp. 253, 254 (E.D.N.Y. 1961). In Elgin J. & E. Ry. Co. v. Brotherhood of Railroad Trainmen, 302 F.2d 540, 545 (7th Cir. 1962) the court affirmed the award of expenses and attorneys' fees. Neither the Seventh Circuit opinion nor that of the district court, 196 F.Supp. 158 (N.D.Ill.1961) disclose whether a bond was filed or if so in what amount. The district court reserved decision for the purpose of fixing the amount of the award until after the mandate on any appeal should issue. Thus the Elgin case may be interpreted as recognizing that the plaintiff's liability under Sec. 7 is open ended.
 
 
 53
 Several considerations lead us to the conclusion that the liability of the plaintiff for loss, expense or damage under Sec. 7 was not intended by Congress to be restricted solely to the amount of whatever bond the court may have required. These are:
 
 
 54
 (1) the language of the statute to which we have referred above;
 
 
 55
 (2) the fact that the statute changed the substantive law with respect to the recoverability of attorneys' fees;
 
 
 56
 (3) the fact that the statute recognizes a liability for resort to the civil process in cases where an action for malicious prosecution would not lie; and
 
 
 57
 (4) the remedial purpose intended by Congress.
 
 
 58
 The fourth consideration is particularly compelling. The enactment of the Norris-LaGuardia Act reflected a judgment that at least in the period prior to 1932 the judges of federal district courts were entirely too willing to accede to requests by employers for injunctions against labor unions. See Boys Markets, Inc. v. Local 770, Clerks Union, 398 U.S. at 250 251, 90 S.Ct. 1583; F. Frankfurter & N. Greene. The Labor Injunction (1930). It is hardly logical to read Sec. 7 so that the extent of the new liability for loss, expense, or damage which it created would depend entirely on the unbridled discretion of these same district court judges against whom the whole statute was directed. Yet that is the very result of the Donnelly decision. The atmosphere of the federal courts in labor cases may well have changed since 1932, but Congress has not seen fit to amend Sec. 7.
 
 
 59
 We hold, then, that in any case involving a labor dispute the liability of the plaintiff, though not of any surety, for loss, expense or damage, including attorneys' fees, under Sec. 7 of the Norris-LaGuardia Act shall be fixed by the court without regard to any limitation in an injunction bond. Since in each of the instant cases a bond was filed we are not required to decide what the result should be in a case where no undertaking was filed.
 
 
 60
 The amount of expenses and of reasonable attorneys' fees have been stipulated. The record does not disclose whether the stipulated amounts of expenses included statutory costs on appeal in the prior appeal. In that appeal we held that each party should bear its own statutory costs. These amounts should not be included in the judgment.
 
 
 61
 The order of the district court will be reversed and the cases remanded to the district court for the entry of a judgment awarding the stipulated attorneys' fees and the stipulated expenses except for statutory costs on the prior appeal.
 
 
 62
 KALODNER, Circuit Judge (concurring in part and dissenting in part):
 
 
 63
 I agree with the reversal of the District Court's Order.
 
 
 64
 I disagree, however, with the majority's direction to the District Court to enter a judgment, in the instant proceedings, awarding the stipulated attorneys' fees and expenses, except for statutory costs on the prior appeal.
 
 
 65
 In my opinion, since the defendants below have elected to seek recovery of their reasonable attorneys' fees and expenses in the same proceedings in which the preliminary injunctions were improvidently issued they are for that reason limited in their recovery to the amounts specified in the injunction bonds posted in these proceedings, under Section 7(e) of the Norris-LaGuardia Act, 29 U.S.C.A. Sec. 107(e).
 
 
 66
 Section 7(e) provides in relevant part: ". . . No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.
 
 
 67
 "The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity. Mar. 23, 1932, c. 90, Sec. 7, 47 Stat. 71." (emphasis supplied).
 
 
 68
 The cited provisions plainly spell out two separate and independent procedures for recovery of reasonable attorneys' fees and expenses incurred by a party against whom a temporary injunction has been improvidently granted; he may elect to have recourse against the injunction bond in the same proceeding in which it was posted, or he may independently elect "to pursue his ordinary remedy by suit at law or in equity" for his recovery. It is a reasonable assumption that Congress, cognizant of the well-settled general rule that the liability on an injunction bond is limited by its face amount, legislated the provision affording a right of independent suit for recovery of permissible attorneys' fees and expenses in order to insure full reimbursement of such fees and expenses.[1]
 
 
 69
 Here, the majority construes Section 7(e) to permit the aggrieved parties to recover in full their attorneys' fees and expenses in the same proceedings in which the injunction bonds were issued, even though they substantially exceed the aggregate amounts of the posted injunction bonds.
 
 
 70
 There is no warrant for such a construction, and it can only be described as impermissible judicial legislation. The majority has failed to cite any case which even remotely affords nourishment for its construction, even though it transgresses the procedural scheme of Section 7(e).
 
 
 71
 I would reverse the District Court's Order with directions to enter a judgment awarding the defendants below $4,000.00, the aggregate amount of the injunction bonds posted by the plaintiffs, in the event that the defendants do not choose to exercise their right to withdraw their pending Motion for allowance of the stipulated attorneys' fees and expenses.
 
 
 
 [1]
 The parties have agreed that Mr. Engle advanced expenses of $730.94 and that a reasonable attorney's fee for his services is $3,380.00; for Mr. Owens, $1,120.00; for Mr. Joseph Yablonski, $3,580.00; for Mrs. Feldman, $1,640.00; and for Mr. Kenneth J. Yablonski, $900.00
 
 
 [2]
 ". . . and except after findings of fact by the court, to the effect-
 (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
 (b) That substantial and irreparable injury to complainant's property will follow;
 (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
 (d) That complainant has no adequate remedy at law; and
 (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."
 29 U.S.C. Sec. 107.
 
 
 [3]
 "'A District Court entertaining an action under Sec. 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity-whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.' 370 U.S., at 228, 82 S.Ct., at 1346. (Emphasis in original.)" 398 U.S. at 254, 90 S.Ct. at 1593
 
 
 [4]
 Though not in all states, New Jersey and Pennsylvania, for example, in their counterparts of the Norris-LaGuardia Act permit the recovery of attorneys' fees for the erroneous issue of an injunction against a labor union. See N.J.S.A. 2A:15-51, 15-52, 15-53; 43 Pa.Stat.Ann. Secs. 206f, 206i, 206j
 
 
 [5]
 Appellees also cite Powelton Civic Home Owners Ass'n. v. Department of Housing and Urban Development, 284 F.Supp. 809 (E.D.Pa.1968); Monolith Portland Midwest Co. v. Reconstruction Finance Corp., 128 F.Supp. 824, 878 (S.D.Cal.1955). These cases are not in point on the interpretation of the bond, even though they do support the proposition that attorneys' fees are not ordinarily an element of damages in the federal courts
 
 
 [1]
 The majority speculates that "[p]robably the possibility of a recovery against a plaintiff who had proceeded without probable cause was the reason why Congress added the last sentence of Sec. 7 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 107."
 The ready answer to such speculation is that Sec. 7(e) provides that recovery of reasonable attorneys' fees and expenses arises, without more, when there has been an "improvident or erroneous" issuance of a temporary restraining order, and accordingly, lack of "probable cause" is an irrelevant consideration.