**ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS, an Incorporated Association, Individually and on Behalf of its Members, Plaintiff,**

v.

**ILLINOIS CONFERENCE OF TEAMSTERS, an unincorporated Association, Individually and on Behalf of its Members, Defendant.**

Civ. A. No. 4620.

United States District Court,
S. D. Illinois, S. D.

Aug. 11, 1972.

Karl W. Grabemann, Chicago, Ill., Jay G. Swardenski, Peoria, Ill., for plaintiff.

Gerry M. Miller, Milwaukee, Wis., Clyde E. Craig, St. Louis, Mo., for defendant.

## DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, District Judge.

This suit, which seeks declaratory judgment construing a collective bargaining agreement in which interpretive arbitration is not required, was "remanded for further proceedings" consistent with an opinion of the United States Court of Appeals for the Seventh Circuit handed down January 31, 1972 (454 F.2d 1324). That clearly written and well-considered opinion reversed an earlier injunction order of this court on the ground that jurisdiction therefor did not exist by virtue of § 4 of the Norris-LaGuardia Act (29 U.S.C. § 104); but, as defendant concedes here, it neither decided the merits of this case nor decided that the merits should not be considered here. The Court of Appeals clearly did construe the agreement to the extent of deciding that the right to strike to enforce its position on deadlocked grievances had been reserved to the union by the terms of the agreement, and that right is no longer disputed by plaintiff here.

Both parties have filed motions for summary judgment. The plaintiff proceeds on the theory that the bargained language of the successive agreements involved is clear and controlling without material factual dispute, so that the meaning, in accord with plaintiff's understanding, should be declared by the court. The defendant proceeds on the theory that this court lacks authority to further construe the agreement because it is clear that the parties agreed on "economic recourse" (the right to strike on the union's part) as the *sole* means of settling deadlocked grievances; but that, even if that argument fails, clear language in the new agreement shows that the union's understanding of the totality of bargained terms is correct.

It is clear that there are no genuine issues of material fact requiring trial herein—the dispute is purely one of the meaning of signed collective bargaining agreements and what options for resolution of dispute are available to the parties thereto when they disagree on the meaning of their agreements. It is perfectly clear from the entire record herein that the continued effectiveness or cancellation of the "grandfather clause"

of the '67–'70 contract, as of April 1, 1970, was never bargained by the parties to a definitive conclusion which was accepted and understood by both. The union bargainers sought to get rid of it, and they believed they had done so when a similar clause was left out of the '70–'73 agreement which specifically said wage rates thereunder were to be effective as of April 1, 1970. The employer bargainers sought to keep the "grandfather clause" of the expired agreement for the 1970 period, and they thought this had been accomplished when no language was agreed upon to cancel it. The principal negotiators for the parties were in honest and perhaps understandable disagreement on this point when they signed the new contract on May 27, 1970. Grievances were promptly initiated by the union under the new agreement and they were mutually processed to deadlock in the joint grievance committee. Strikes thereafter precipitated this litigation.

The 1967 agreement, which was succeeded by the 1970 agreement as of April 1, 1970, contained the so-called "Grandfather Clause," as follows:

"It is agreed that all work contracted for prior to the expiration date of this or any subsequent agreement shall be completed under the wage rates of the old contract. However, no job shall be completed under the terms of the old agreement after one year's time from the date of submission of bids or three (3) months from the expiration of the old agreement, whichever is the earlier date."

■ The effect and meaning of that clause was clear to all concerned, the same type of clause having been applied under successive prior agreements. Taking defendant's second argument first, because it seems easiest, it is clear to this court, under basic principles of interpretation, that this clause of the 1967 agreement did carry over in accordance with its terms into the 1970 agreement period because there was no agreement to the contrary. Agreement not to include such a clause in the 1970

contract obviously did not change the carry-over provision of the old agreement, and except for work subject to this clause, the new rates always became effective with the new contract. Nothing in the 1970 bargaining history is persuasive on this score except to show that agreement on the specific point was not achieved. Likewise, Judge Stevens' footnote dictum from the Court of Appeals' decision herein (454 F.2d 1327 n. 7), which appears to find some problem in that the grandfather clause by its terms applied to all "future" contracts. Quite clearly this was a passing thought, as Judge Stevens specifically in the same note declines to decide the question, and the point does not bear scrutiny, because such clause could not be effective by its terms longer than three months after the expiration of an "old agreement" in which it was contained. Accordingly, the only real question here is whether this court can and should take cognizance of and act upon the cause of action asserted in the complaint.

■ Defendant's argument that the court lacks authority to interpret the contract to resolve deadlocked grievances is not that Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) and the Declaratory Judgment Act (28 U.S.C. § 2201) do not confer such subject matter jurisdiction in cases involving collective bargaining, but rather that "the agreement here confers no such authority on this court, at least in circumstances where the aggrieved party elects to exercise its right to engage in economic recourse." (Defendant's Memo. p. 7) Because the agreement provided "either party shall be permitted all economic recourse" unless a majority of the Joint Committee decide to submit a grievance dispute to arbitration, it is argued that strike or lockout is "the *sole* agreed-upon means of settlement of deadlocked grievances." This is patent *non-sequitur*, unless it be considered that collective bargaining agreements are not made in the light of and subject to existing law of the land. It is simply

not believed· that a collective bargaining agreement can divest courts of established jurisdiction, at least unless that is clearly and mutually agreed upon by both parties. Certainly the cases holding that courts will defer to arbitration where that has been agreed upon are inapposite where, as here, arbitration is expressly rejected.

■ To accept the proposition that either a reservation of right to "economic recourse," or the resort to such, in any dispute over the meaning of a collective bargaining agreement ousts a court of existing jurisdiction to construe the agreement on application of either party (either before, during, or after there has been some resort to economic recourse) would simply mean that no signed collective bargaining agreement of this type could have any more meaning or sanctity as a contract than either party wished to accord to it at any given time. To the extent that any language in Standard Food Products Corp. v. Brandenburg, 436 F.2d 964 (C.A.2 1970), and Haynes v. U. S. Pipe & Foundry Co., 362 F.2d 414 (C.A.5 1966), may be considered authority for that proposition, such language is misleading, as is all the other *obiter dicta* quoted by defendant in ·argument on this point. Nothing which this court has found in the still developing federal case law in support of responsible collective bargaining requires or even suggests such a proposition.

If economic recourse is in fact resorted to and does in fact bring agreement in any dispute, there obviously will not be litigation, or any pending litigation presumably will be dismissed ·as settled when any such agreement is achieved; but neither of those circumstances can mean that, if the economic pressure does not bring agreement between parties on the meaning of a written collective agreement they already have mutually accepted, ·a court should or must refuse to construe the agreement for them at the instance of either party thereto or of an employee covered thereby.

■ Either party which chooses to exercise its unquestioned right to economic warfare to enforce a certain interpretation of an agreement must do so at the peril, at least, of a judicial construction of the agreement that its interpretation is erroneous under the law. It is not necessary to decide at this time the full implications of and the extent of enforceability of such judicial interpretation under hypothetical circumstances; but failure to so decide and declare by no means requires abdication of clear statutory jurisdiction. International Union, United Automobile, Aircraft etc., Local 391 v. Webster Electric Co., 299 F.2d 195 (C.A.7 1962), is fully in accord with this view, even if not "on all fours" on the facts.

■ Defendant's arguments on the possible adverse effect on future grievance settlements and on judicial business of the court's availability to interpret agreements in these circumstances is pure speculation. It fails completely when it is recognized that such availability does not displace economic recourse, at least pending judicial construction of the agreement; that judicial availability does not require either party to use it, and presumably neither will unless value is believed achievable thereby; and that the primary reason for the very existence of civil courts is to provide an available alternative to more destructive means of dispute settlement. This court decides that it has authority to construe the collective bargaining agreement between the parties as requested by plaintiff here; and that it should not abstain from so doing simply to maintain "economic recourse" as the only available means of settlement of such dispute.

It seems crystal clear to this court that any holding to the contrary would be a distinct setback for collective bargaining in general and for the efficacy of the many collective agreements which are being achieved constantly in labor-management relations without requiring arbitration of later disputes over interpretation. The federal courts, in sup-

**1300**

port of collective bargaining as a sound means of approaching labor-management peace, should not say to parties in the circumstances existing here, "You're simply going to have to fight it out—the courts are closed so far as you are concerned."

Accordingly, it is ordered that defendant's motion for summary judgment is denied.

It is further ordered that plaintiff's motion for summary judgment is allowed, and the court does hereby declare that subparagraph (c) of the second paragraph of Article XXIII of the agreement between the parties dated April 1, 1967 was in effect in accordance with its terms after April 1, 1970, so as not to require wages higher than "the wage rates of the old contract" during any period or on any work described in said paragraph.