ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS, an Incorporated Association, Individually and on Behalf of its Members, Plaintiff-Appellee,

v.

ILLINOIS CONFERENCE OF TEAMSTERS, an Unincorporated Association, Individually and on Behalf of its Members, Defendant-Appellant.

ILLINOIS CONFERENCE OF TEAMSTERS, an Unincorporated Association, Individually and on Behalf of its Members, Plaintiff-Appellant,

v.

ASSOCIATED GENERAL CONTRACTORS of ILLINOIS, an Incorporated Association, Individually and on Behalf of its Members, Defendant-Appellee.

Nos. 72–1801, 73–1275.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1973.

Decided Oct. 19, 1973.

Clyde E. Craig, St. Louis, Mo., Gerry M. Miller, Milwaukee, Wis., for defendant-appellant.

Jay G. Swardenski, Peoria, Ill., Karl W. Grabemann, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

This is the Union's second appeal. The litigation arose out of a dispute over the wage scale applicable to work performed during the three month period between April 1, 1970, and July 1,

1970, on highway construction contracts which had been negotiated previously. After the contract grievance procedure became deadlocked, the Union struck or threatened to strike contractors who refused to pay the higher rate. Plaintiff, an association of employers, then invoked the district court's jurisdiction under § 301 of the Labor Management Relations Act;[1] the court enjoined the strike in order to preserve its jurisdiction to resolve the underlying dispute. Without reaching the merits of that dispute, we held that the entry of the injunction was prohibited by § 4 of the Norris-LaGuardia Act,[2] and remanded for further proceedings.[3] The district court, 345 F.Supp. 1296, then decided the merits of the contract issue in the contractors' favor. On appeal[4] the Union contends: (1) that its recovery of costs and expenses caused by the issuance of the injunction should not have been limited by the amount of the bond posted by plaintiff; (2) that the district court should not have decided the merits; and (3) that it did so incorrectly. We affirm.

## I.

The preliminary injunction required plaintiff to file "a bond with suitable surety in the amount of $1,000.00 securing any amounts that may hereafter be awarded to defendant or its members in the event it should be determined that this order was improperly obtained." Counsel for the Union objected to the amount of the bond, suggesting that it should be increased to at least $10,000. No formal motion to increase the bond was filed, however, and the Union did not question its adequacy on the first appeal. The issue before us is not whether the bond was adequate; rather, assuming that it was inadequate, does it nevertheless limit the Union's recovery for costs and expenses incurred as a result of the erroneous issuance of the injunction?

The Union relies on § 7 of the Norris-LaGuardia Act[5] as recently construed by the Third Circuit in United States Steel Corp. v. United Mine Workers, 456 F.2d 483 (1972), cert. denied, 408 U.S. 923, 93 S.Ct. 2492, 33 L.Ed.2d 334. We agree that the case is directly

1. 61 Stat. 156, 29 U.S.C. § 185(a).

2. 47 Stat. 70–71, 29 U.S.C. § 104.

3. Associated General Contractors of Illinois v. Illinois Conference of Teamsters, 454 F. 2d 1324 (7th Cir. 1972).

4. There are two appeals to be decided. In the first, 72–1801, Judge Morgan denied the Union's claim for costs in excess of the bond, and granted summary judgment on the merits for AGC. In the second, 73–1275, Judge Poos dismissed the Union's attempt to recover costs in an independent suit based upon Section 7 of the Norris-LaGuardia Act. By order of this court dated May 11, 1973, the two appeals were consolidated.

5. That section prohibits the issuance of an injunction in any case growing out of a labor dispute except in certain narrowly defined situations, then prescribes the procedure that must be followed in such cases, and finally outlines the nature of the undertaking the plaintiff must file as follows:

"No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceedings and subsequently denied by the court.

"The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity." 47 Stat. 71, 29 U.S.C. § 107(e).

in point but we disagree with its reading of the statutory language.

■ The language of the section does not expressly authorize any recovery in excess of the amount of the bond. It provides that no temporary restraining order or preliminary injunction shall issue without a bond, and further that the amount of the bond shall be "sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction." Thus, if the district court were persuaded that the wrongful issuance of an injunction might cause damages in excess of the normal recoverable costs, he clearly would have authority to require a bond in an amount sufficient to indemnify against such damages. But the statute does not purport to change the law which would otherwise be applicable to the recovery of damages in excess of the amount of the bond.

■ Indeed, the last sentence in the section gives the defendant the right to elect either his remedy under the surety bond or to "pursue his ordinary remedy by suit at law or in equity." Thus, if apart from the terms of the bond, the defendant is entitled to recover costs, expenses or damages in excess of $1,000, that right is unaffected by the limit on the amount which may be recovered under the bond. Neither the bond nor the statute curtails the recovery the defendant could otherwise obtain. Nor, in our opinion, does the bond or the statute expand the amount which the defendant may recover when he is not asserting a claim under the bond. We believe the right which exists apart from the bond is unaffected by the fact that the statute authorizes security in an amount greater than the claimant could otherwise recover.

■ In this case, the Union does not argue that, apart from § 7 of the Norris-LaGuardia Act, it has a right to recover expenses or damages in excess of $1,000. It relies only on § 7 as creating a previously unknown substantive right. Acceptance of its claim would be such a significant departure from long and well settled practice[6] that we believe a congressional intent to effect that change would have been expressed unambiguously.[7] We therefore follow the decision of the Eighth Circuit in International Ladies Garment Workers Union v. Donnelly Garment Company, 147 F. 2d 246 (1945), cert. denied, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972, rather than the ruling of the Third Circuit in *United States Steel Corp., supra.*[8]

6. In United Motors Service v. Tropic-Aire, 57 F.2d 479, 484 (1932), decided less than a month before the approval of the Norris-LaGuardia Act, the Eighth Circuit said "[U]nder the holdings practically of all [sic] the federal and most of the state courts the damages for the improvident issue of an injunction cannot be assessed . . . in an amount in excess of the injunction bond . . . ." This remains the general rule. See 7 Moore's Federal Practice ¶ 65.10[1] (1973), at 65-98—65-99.

7. In its *United States Steel* decision, the Third Circuit relied heavily on the fact that the statute "*reflected a judgment that at least in the period prior to 1932 the judges of federal district courts were entirely too willing to accede to requests by employers . . . .*" 456 F.2d at 493. We have also recognized the significance of this legislative motivation. See our opinion on the prior appeal, 454 F.2d at 1328. See also Boys Market v. Clerks Union, 398 U.S. 235, 250, 90 S.Ct. 1583, 26 L.Ed.2d 199. It does not follow, however, that such a general legislative intent, not implemented by specific statutory language, may alter settled law applicable to injunction bonds. Indeed, a comment by Senator Norris on the relevant portion of § 7 suggests the contrary: "The usual provision for the giving of bond before the issuing of such a temporary order is also provided for." Quoted in Koretz, Statutory History of the United States, Labor Organizations (1970), at 226.

8. Our decision is predicated on the assumption that the portion of § 7 upon which the Union relies is applicable to injunctions permitted by the *Boys Market* ruling. There is reason to believe that this assumption is invalid. Nowhere in its opinion in *Boys Market* did the Court expressly state that the injunction was permitted by the exceptions which are enumerated in § 7. Indeed, in his

## II.

The Union does not question the district court's power to grant a declaratory judgment interpreting a collective bargaining agreement.[9] It makes the narrow claim that under the terms of this particular contract, the parties had agreed that deadlocked grievances would be resolved by economic recourse without resort to the courts.

Unquestionably "the means chosen by the parties for settlement of their differences under a collective bargaining agreement [must be] given full play." See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403.[10] But it is one thing to hold that an arbitration clause in a contract agreed to by the parties is enforceable. It is quite a different matter to construe a contract provision reserving the Union's right to resort to "economic recourse" as an agreement to divest the courts of jurisdiction to resolve whatever dispute may arise. This we decline to do.

In our first opinion in this case we noted that the parties had not agreed to compulsory arbitration and that the Union had expressly reserved the right to "economic recourse" in the event of a deadlock. We therefore held that the rationale of *Boys Market* did not justify enjoining the strike. The right to strike was protected by the Norris-La-Guardia Act. However, we did not, and do not now, construe the agreement as requiring economic warfare as the exclusive or even as a desirable method for settling deadlocked grievances. The plain language of the statute protects the right to strike, but there is no plain language in the contract compelling the parties to use force instead of reason in resolving their differences. In our view, an agreement to forbid any judicial participation in the resolution of important disputes would have to be written much more clearly than this.

## III.

Finally, the Union argues that the merits were decided improperly. As we recognized on the first appeal, there is substance to the Union's position. We need not repeat what we said there. However, after reviewing the arguments presented then, as well as now, and after studying the district court's analysis of the issue, we are convinced that he reached the correct conclusion. We think the significance of the Union demand, as well as the contract provision, that the 1970 wage rates would become effective as of April 1, is overcome by the fact that comparable language in prior agreements was consistently understood to be subject to the terms of the "grandfather clause" in the expiring contract. In order to vary the terms of

dissent, Justice Black dismissed the § 7 exceptions as "not here relevant," 398 U.S. at 255, 90 S.Ct. 1583. Moreover, the *Boys Market* ruling is predicated in part on § 301 of the Taft-Hartley Act which was not enacted until 1947, and in part on principles fashioned by the courts from their understanding of national labor policy as a whole. See Textile Workers v. Lincoln Mills, 353 U.S. 448, 451, 456, 77 S.Ct. 912, 1 L.Ed.2d 972. The Court's analysis in *Lincoln Mills* specifically indicates that the procedural requirements contained in § 7 of the Norris-LaGuardia Act are inapplicable to some labor injunctions. See 353 U.S. at 457–459, 77 S. Ct. 912. In this case, however, we need not decide whether the controlling bond requirement is contained in Rule 65(c) of the Federal Rules of Civil Procedure rather than § 7 of the Norris-LaGuardia Act since we are persuaded that either of those provisions would lead us to the same result.

9. "Our point is not that the court lacks subject matter jurisdiction over alleged violations of collective bargaining agreements or lacks the power to grant declaratory judgments in this regard. Rather, we say that under the agreement in question the court lacked the authority to grant the relief sought. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)." Brief for Appellant at 26.

10. Section 203(d) of the Taft-Hartley Act declares "Final adjustment by a method agreed upon by the parties . . . to be the desirable method" for the settlement of disputes. 61 Stat. 154, 29 U.S.C. § 173(d).

the 1967 contract, we believe a more specific expression of intent was required than a mere reiteration of the effective date provision. Moreover, the basic purpose of the grandfather clause—to enable contractors to bid on the basis of reasonably ascertainable labor costs—would be frustrated by the Union's construction. We believe the district court correctly interpreted the contract between the parties.