**S. J. GROVES & SONS COMPANY, a corporation, and Associated General Contractors of Illinois, an incorporated association, et al., Plaintiff-Appellees,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL 627, an unincorporated association, et al., Defendants-Appellants.**

Nos. 77–1915, 77–1916.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1978.

Decided July 31, 1978.

As Amended Oct. 23, 1978.

Gerry M. Miller, Milwaukee, Wis., for defendants-appellants.

Michael J. Bobroff, St. Louis, Mo., for plaintiffs-appellees.

Before PELL and WOOD, Circuit Judges, and FLAUM, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

In the district court the employer sought declaratory judgments in these consolidated appeals that it had not violated the collective bargaining agreement in refusing to satisfy the claims of two employees. The district court granted summary judgments for the employer. The unions appeal. We affirm.

The first grievance arose from the employer's discharge of employee Bor for fighting on the job site during working hours. Bor seeks reinstatement and back pay. In the second grievance, employee Watson demands payment on his behalf to the contractually specified welfare fund for the twelve month period following his dismissal for negligent operation of a company vehicle.

Pursuant to the collective bargaining agreement grievance procedure, both claims were submitted to a committee composed of equal numbers of management and union representatives. The joint committee deadlocked on both the merits of the grievances and on submission to arbitration. Deadlock was the final step in the grievance procedure. Thereafter the collective bargaining agreement permitted each party to take "all lawful economic recourse." Following deadlock the employer filed this action.

The plaintiffs were represented in the initial stages of the action by a law firm in which the brother of the district court judge was a senior partner. Three days after the union suggested that the judge disqualify himself, plaintiffs' counsel withdrew and was replaced by the plaintiffs'

present counsel who has no family relationship with the district judge. Three weeks later summary judgment was granted for the plaintiffs.

Four issues are presented on appeal. (1) Whether the provision of the agreement permitting economic recourse following deadlock foreclosed the plaintiffs from bringing actions pursuant to § 301 of the Labor Management Relations Act of 1947; (2) Whether summary judgment was properly granted in the Bor grievance; (3) Whether summary judgment was properly granted in the Watson dispute; and (4) Did the judge's failure to disqualify himself violate the standards for disqualification set forth in 28 U.S.C. § 455?

I.

■ The threshold issue in this case is whether the district court was divested of its jurisdiction under § 301 of the Labor Management Relations Act[1] over the plaintiffs' action for declaratory judgment by the collective bargaining provision permitting the parties "all lawful economic recourse."[2] We have addressed this issue before. In *Associated General Contractors of Illinois v. Illinois Conference of Teamsters,* 486 F.2d 972 (7th Cir. 1973), the collective bargaining agreement provision reserved the parties' rights to resolve deadlocked grievances by economic recourse. The court found that this provision did not divest the court of jurisdiction to resolve the dispute presented by the employer's action for declaratory judgment.

Defendants contend that the *Associated General* decision is a glaring exception to the holdings and rationale of other federal labor cases and should be overruled.[3] Spe-

---

* The Honorable Joel M. Flaum, United States District Judge for the Northern District of Illinois, is sitting by designation.

1. 29 U.S.C. § 185 (1970).

2. "Deadlocked cases shall be submitted to arbitration if a majority of the Joint Committee determine to submit each matter to an arbitrator for decision. Otherwise, either party shall be permitted all lawful economic recourse."

Article XIX, Section 2(d) of the Collective Bargaining Agreement.

3. The defendants would also have us distinguish the present case on the ground that in *Associated General* the court found that the district court had jurisdiction under § 301 to decide "important" disputes. 486 F.2d at 976. Defendants argue that the dispute in *Associated General* was important because several contractors were involved while here the dispute is

cifically, the defendants contend that the decision is premised on a general federal anti-strike policy which the United States Supreme Court has rejected. The *Associated General* decision is consistent with the cases preceding it. The reasons for the decision are clearly set out and need not be repeated. As to the claim of an anti-strike bias, the *Associated General* decision did not prohibit the use of all economic weapons. The court looked to the language of the agreement to determine if non-economic weapons which would be available under § 301 absent the economic-recourse provision were precluded by it and found they were not.

## II.

Defendants argue that summary judgment for the plaintiffs on the Bor matter was improperly granted because the question of whether discharge was for justifiable cause was one of fact and not resolvable on summary judgment. The defendants further argue that the absence of findings of fact and conclusions of law by the trial court prevents the plaintiffs from establishing on review that summary judgment was properly entered.

 The issue at trial was whether the employer breached the collective bargaining agreement provision authorizing the employer to discharge employees for just cause when it discharged Bor for fighting on the job site during working hours.[4] Summary judgments are properly granted where there is no genuine issue of material fact and the moving party is entitled to judg-

ment as a matter of law. Fed.R.Civ.P. 56(c). All factual inferences must be drawn in the light most favorable to the opposing party. *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir. 1976); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The burden of proof is on the moving party. 6 Moore's Federal Practice ¶ 56.17[11]. Findings of fact and conclusions of law by the trial court may be helpful in carrying this burden on review but are not necessary. Fed.R.Civ.P. 52(a); Moore at ¶ 52.08. Disputes over interpretations of "just cause" provisions are resolvable by summary judgment where there is no genuine issue of material fact.[5]

The parties stipulated to the following facts. "A dispute developed over Bower's (another laborer) use of his personal automobile in this work and led to a heated verbal argument and an exchange of profanity and insult between Atchley and Bor. Bor swung at Atchley, who blocked the blow. Atchley kicked Bor below the stomach, leaving bruises. Bor went to the truck, returned with a three-foot 'Maddox' handle and struck Atchley twice, first, on the back which knocked him to the ground and then again on his legs. Both Bor and Atchley were discharged for fighting on the job." It was also stipulated that prior to this incident Bor had not been disciplined by the company in three years of employment.

 The legal issue is whether these stipulated facts constitute just cause. The law in discharge cases consists of the application of the policies underlying just cause provisions on a case-by-case basis.[6] It is recog-

unimportant because only one contractor is involved. No basis for this distinction appears in *Associated General* or in the Labor Management Relations Act. The phrase "important disputes" in *Associated General* was a reference to labor disputes generally.

4. Article II of the agreement provides that the "Contractors may discharge any employee for justifiable cause . . . ."

5. Cases where summary judgment in discharge disputes was found to be improper involved specific allegations of improper motive, not alleged in the present case, such as anti-union animus, *Conrad v. Delta Airlines,* 494 F.2d 914

(7th Cir. 1971), politically motivated discharge, *Illinois State Employees Union, Council 34 v. Lewis,* 473 F.2d 561 (7th Cir. 1972) or discharge in retaliation for a constitutionally protected action, *Williams v. Allen,* 439 F.2d 1398 (5th Cir. 1971).

6. *See* F. Elkouri, How Arbitration Works 612, 632 (3d ed. 1976). Courts have only rarely been called upon to interpret just cause provisions. These issues arise almost exclusively before arbitrators. Normally the courts enter the determination only to review for purpose of enforcement. In reviewing arbitration decisions the courts do not consider the merits of

nized as a guiding principle that for a penalty to be just it must be in keeping with the seriousness of the offense.[7] The rationale for allowing employers to discharge employees for fighting is that such violence threatens the employer's legitimate concerns in job safety and in employee discipline and morale.[8] We find that where an employee engaged in a heated dispute with another employee on the job site during working hours and repeatedly struck the other employee with a dangerous weapon, once on the back and a second time while the victim was on the ground, the discharge is fully justified.

Defendants argue that this conclusion is contrary to the trend of arbitration decisions.[9] Defendants contend that arbitrators have developed a legal standard which requires the decision-maker to consider mitigating factors such as work record and provocation in determining just cause. Defendants conclude that arbitrators have consistently held discharges to lack just cause on these considerations, that these factors are arguably present here, and that the employer is therefore not entitled to judgment.

We recognize that arbitrators have considered a myriad of factors in deciding whether an employee's violence constituted just cause for discharge. See *Union Carbide Corp.*, 52 LA 423, 425 (Volz 1969) and *C. Schmidt Co.*, 46 LA 1208, 1210 (Volz 1966). Further, the defendants are correct that in some circumstances arbitrators have reinstated discharged employees on the basis of an unblemished work record or the existence of provocation. However, a review of arbitration decisions reveals that whether any mitigating factor mandates reinstatement depends on the peculiar facts of each case. Arbitrators have endorsed the proposition that under certain circumstances fighting alone may be the basis for discharge. *Harry M. Stevens, Inc.*, 51 LA 258, 260 (Turkus 1968); see *C. E. Building Products, Inc.*, supra, note 8; *Fedders Corp.*, supra, note 8. Defendants cite other decisions to show that arbitrators have reinstated employees dismissed for fighting if the offender had a clean record.[10] We would not anticipate uniformity, but we note that in some of the cases cited the disputes did not reach the level of violence displayed here, nor did the particular participants return to the fight after it initially had been broken up. In all the cases cited the employees involved had seniority far in excess of Bor's three years. A corollary to the above proposition is that discharge may be justified despite the existence of a perfect work record.[11] Also corollary is that discharge may be justified regardless of the existence of provocation,[12] or where the re-

---

the decision, but consider only whether the arbitrator's award "draws its essence from the collective bargaining agreement." *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int. U., Local 7-1*, 548 F.2d 1288, 1294 (7th Cir. 1977).

**7.** Arbitrators have used this axiom in interpreting just cause provisions. Elkouri, *supra* note 6, at 630.

**8.** *C. E. Building Products, Inc.*, 60 LA 506, 598 (Hall 1973) (emphasizing plant morale); *F. S. Services, Inc.*, 47 LA 208, 212 (Sembower 1966) (emphasizing the need for peaceful nonviolent work environment); *Fedders Corp.*, 62–2 ARB ¶ 8450, pp. 4655, 4657 (Berkowitz 1962) (emphasizing safety and discipline); *Olin Mathieson Chemical Corp.*, 44 LA 115, 116 (McDermott 1965) (emphasizing safety and plant discipline).

**9.** The unions rely on arbitration decisions but refuse to submit the issue to arbitration. We note that arbitration decisions are not binding on this court though the dearth of court interpretations on the just cause issue makes them useful guides.

**10.** *FS Services, Inc.*, 47 LA 208 (Sembower 1966); *White Motor Corp.*, 50 LA 541 (Teple 1968); *Driscoll Wire Co.*, 47 LA 346 (Summers 1966); *Caterpillar Tractor Co.*, 44 LA 87 (Larkin 1965); *International Harvester Co.*, 21 LA 32 (Cole 1953); *Victorian Instrument Co.*, 40 LA 435 (Kates 1963); *Olin Mathieson Chemical Corp.*, 44 LA 115 (McDermott 1965); *R. J. Tower Corp.*, 68 LA 1160 (Roumell 1977).

**11.** See *International Harvester Co.*, 50 LA 766, 768 (Doyle 1968), where discharge was held to be justified despite an impeccable fifteen year work record.

**12.** *Harry M. Stevens, Inc.*, supra, at 259.

sponse is out of proportion to the provocation.[13]

We conclude that the summary judgment was properly granted. It is undisputed that the discharged employee engaged in a heated dispute, walked away, returned with an ax handle, and repeatedly struck another employee. Under these circumstances, plaintiffs are entitled to judgment as a matter of law despite the employee's clean work record or the suggestion of some provocation.

## III.

Summary judgment was also properly granted on the Watson complaint. The issue at trial was whether the employer's lack of contributions to the Welfare Fund on behalf of Watson for twelve months following his discharge violated Article X of the collective bargaining agreement. The district court held it did not. We agree.

Article X reads in relevant part: "If an employee is injured on the job, the employer shall continue to pay the required contributions based on a forty (40) hour week; however, such contributions shall not be paid for a period of more than twelve months." Defendants object that the employer was not entitled to judgment as a matter of law. Under the defendants' interpretation of the provision, all employees injured on the job are entitled to contributions up to twelve months regardless of termination of employment. We disagree. The provision clearly does not require that twelve months of payments be made for each employee on the job. The provision requires payment of not more than twelve months and therefore anticipates that in some situations payments will be for a

shorter period or for no period. The issue becomes whether this is such a situation.

The facts in this incident unrelated to Bor's discharge are also undisputed. Watson was injured on the job when he attempted to drive his truck under a bridge with the dump bed in the elevated position. Groves discharged Watson as a result of the incident. No payments were made to the Welfare Fund following Watson's discharge. At no time has Watson argued that the discharge was unjustified nor denied his negligence in the incident.

Nothing in the agreement suggests that it was the intent of the parties that payments should be made under such circumstances. The purpose of the provision was to continue payments to the fund on behalf of an employee which would have been made by the employer but for the work-related injury. However, because of Watson's justified discharge, the fund would have been entitled to nothing on his behalf. We conclude that an employee injured as a result of his own negligence and discharged for that reason is not entitled thereafter to employer payments to the welfare fund on his behalf.

## IV.

Defendants argue that the same circumstances which this court found to require recusal in *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977), were present in this case and were not cured by withdrawal of plaintiffs' counsel. Defendants' allegations are based on 28 U.S.C. § 455, subsections (a), (b)(5)(ii) and (b)(5)(iii).[14] On appeal defendants principally argue a section (a) violation, but we will also consider the possi-

---

**13.** See *International Harvester Co., supra* note 11, at 768, where the discharged employee responded to provocation by mere words with an assault with a deadly weapon.

**14.** 28 U.S.C. § 455 provides in pertinent part:
Disqualification of justice, judge, magistrate, or referee in bankruptcy
(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

\* \* \* \* \* \*

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:

\* \* \* \* \* \*

(ii) Is acting as a lawyer in the proceeding;
(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

bilities raised in defendants' brief of violations of (b)(5)(ii) and (b)(5)(iii).

■ After the Davis & Morgan firm withdrew from the case, neither Attorney Morgan, the brother of the district judge, nor his firm had any interest whatsoever which could have been substantially affected by the outcome of the proceedings within the meaning of (b)(5)(iii). At oral argument, plaintiffs' present counsel confirmed to this court that all financial obligations between Davis & Morgan and plaintiffs had been fully settled prior to judgment. No financial interest was contingent on the outcome. Nor do we find that any substantial nonpecuniary interest of the firm, such as good will or firm reputation, was maintained by the firm in the litigation.

A survey of cases decided under section (a) uncovers no controlling precedent. While the facts are closely akin to those found in this court's first application of § 455 in *SCA Services*, there is a distinction between the two cases, namely, the withdrawal of the Davis & Morgan firm. It is the significance and timing of this distinction that is at issue here. We find no recent authority involving situations where the judge was related to an attorney who participated in litigation and then withdrew from the case.[15] In fact, there is little authority on the more general issue as to whether *any* grounds for disqualification may be cured by measures short of disqualification of the judge.[16]

In *Fredonia Broadcasting Corp. v. RCA Corp.*, 569 F.2d 251 (5th Cir. 1978), the court found that the impartiality of a judge might reasonably be questioned on the ground of the appearance of unfair advantage. In *Fredonia*, a judge's former clerk actively participated as plaintiff counsel's associate in the preparation for retrial of a case on which he had worked as a clerk for the district judge during the first trial. Based on plaintiff's assurance that the associate would be withdrawn from the case, the trial court denied the defendant's motion for disqualification. The trial court's denial of the motion was held to be an abuse of discretion and the case was remanded for a new trial before a different judge. The court reasoned that the use of information gained through a privileged association with the judge could unfairly aid the plaintiff at the second trial and therefore established an appearance of impropriety. The court then stated that "where the appearance of impropriety is already established, a taint on the judicial system remains as long as [the judge] presides over the case."[17] *Id.* at 256. We find no fault with that decision but find the present case clearly distinguishable. The particular grounds of disqualification found in *Fredonia* irrevocably tainted the proceedings. Once it appeared that the associate had or might have conveyed the judge's innermost thoughts to counsel, withdrawal of the associate was futile. It would still appear that counsel had an unfair advantage by virtue of knowledge gained through the clerk's earlier activity. In the present case, the ground for disqualification was alleged bias due to the familial relationship between the

---

**15.** Plaintiffs cite 50 A.L.R. 2d 143, 169 (1956); *Williamson v. State*, 40 Ga.App. 496, 150 S.E. 464 (1929); *Casmento v. Barlow Brothers Co.*, 83 Conn. 180, 76 A. 361 (1910). In both of those cases the courts found that *even if* grounds for disqualification existed at some point, they did not exist at the time of trial. Therefore, an interpretation of these cases that withdrawal of counsel would cure grounds for disqualification would be dicta. As we pointed out in *SCA*, pre-amended § 455 cases offer little guidance in interpreting the standards of the present statute. 557 F.2d at 114.

**16.** Contrary to plaintiffs' claim, we do not read *Kinnear-Weed Corp. v. Humble Oil & Refining Co.* under old § 455 as holding that the district

judge's ownership of stock constituted grounds for disqualification which were then removed by sale of the stock. *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 403 F.2d 437, 440 (5th Cir. 1968), *remanded* 324 F.Supp. 1371 (S.D.Tex. 1969), *aff'd*, 441 F.2d 631 (5 Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971).

**17.** One might extrapolate from this analysis that whenever grounds for disqualification exist at some point in the proceeding, no effort of the parties short of disqualification of the judge can remove the taint. We do not think the court intended such a broad generalization, nor do we adopt it here.

judge and plaintiffs' firm. Whether that circumstance established a continuing appearance of partiality despite the remedial efforts of counsel we now consider.

At issue in a § 455 charge is the *appearance* of partiality.[18] The basis for a disqualification for lack of impartiality must be *reasonable*.[19] The standard of appellate review is whether failure to disqualify was an abuse of the trial court's discretion.[20] We find that the trial court judge did not abuse his discretion in concluding that the appearance of his impartiality could no longer reasonably be questioned.

We begin necessarily with the premise that had there been neither recusal nor the withdrawal of counsel prior to the summary judgment, a § 455(a) violation would have occurred. Unlike *Fredonia*, however, this is not a situation where prior to the remedial efforts the "appearance of impropriety is already established which could not be erased or cured." By the time the district judge was in a position to make a ruling which could give the appearance of partial treatment to the client of his brother's firm, the brother's firm had withdrawn and severed all connection with the case. Prior to withdrawal, no discretionary rulings were required of the judge. Subsequent actions of the court could give the appearance of partiality only if the withdrawal and replacement of counsel were formal rather than substantive. This was not the case. As indicated above, the Davis & Morgan firm maintained no interest in the case whatsoever, pecuniary or otherwise. The substitute firm undertook all duties of counsel and made major contributions to the basis for summary judgment through submission of plaintiffs' reply brief and through oral argument.

Neither the parties nor the judge had any advance notice at the time of the filing of this case of the future holding in *SCA*. The issue had not been previously posed to this court prior to publication of that decision on June 17, 1977. Defendant unions made their suggestions of disqualification shortly after publication of the *SCA* decision. Three days after the motion and three weeks before the court's summary judgment ruling the Davis & Morgan firm voluntarily withdrew. There is no evidence that Judge Morgan prompted that withdrawal through delay or by any other means, direct or indirect. The very short time periods between the *SCA* decision, the defendants' motion, and plaintiffs' counsel's withdrawal are not indicative of any laxity or impropriety on the part of the trial judge with a crowded docket. The trial court did not abuse its discretion in concluding that a reasonable man informed of all the circumstances would conclude that the judge had acted impartially.

Lastly, we consider the allegation that Attorney Morgan was "acting as a lawyer" within the meaning of (b)(5)(ii) by virtue of his relationship with the firm representing the plaintiffs prior to withdrawal. In *SCA* that question was left open.[21] The Fifth Circuit has subsequently held that the "acting as a lawyer" provision "requires actual participation." *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 463 (1977). In our present case there was no actual participation by the judge's brother. Had there been personal and active participation the question of the effect of the firm's subsequent withdrawal would have constituted a more difficult question. In any event considering the timing and all the other circumstances of this particular case we believe the withdrawal was sufficiently curative.

However, the provisions of § 455 are recognized as mandatory with the responsibility squarely upon the judge to disqualify himself in certain circumstances. 557 F.2d at 117. We do not intend to encourage a lawyer's withdrawal as a sub-

---

18. 557 F.2d at 116.

19. *Id.*; H. Rep. No. 93–1453, 1974 U.S.Code Cong. & Admin.News, pp. 6351, 6355.

20. 557 F.2d at 117–18.

21. A finding of § 455(a) and (b)(5)(iii) violations made a decision on the (b)(5)(ii) issue unnecessary.

stitute for the judge's disqualification. That could result in substantial hardship to the client of the withdrawing firm. Now that judges have had time to become fully aware of the possible problems arising under § 455 from similar relationships it is suggested that they identify any case in their district in which a § 455 problem may exist. If required to, judges should promptly recuse themselves without leaving the burden to opposing counsel to first raise the issue.

AFFIRMED.