KODIAK OIL FIELD HAULERS, INC.,
Plaintiff-Appellant,

v.

TEAMSTERS UNION LOCAL NO. 959,
Defendant-Appellee.

No. 77-3676.

United States Court of Appeals,
Ninth Circuit.

Jan. 17, 1980.

---

Stephen C. Hillard, Graham & James, Anchorage, Alaska, for plaintiff-appellant.

Fredric R. Dichter, Anchorage, Alaska, for defendant-appellee.

Before CHAMBERS and TANG, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

Kodiak Oil Field Haulers, Inc. ("KOH") commenced this suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, when Teamsters Union Local No. 959 ("the union") refused to acknowledge KOH's asserted right under the collective bargaining agreement to fire an employee for conduct KOH contends amounted to dishonesty. The suit sought damages and declaratory relief. After a trial on the merits, the district court dismissed KOH's claims on the grounds that: (1) the underlying issue of the propriety of the discharge had been settled when KOH agreed to reinstate the employee in return for the union's termination of a work stoppage; and (2) the Board of Arbitration, whose composition was challenged by KOH, had been validly selected in accordance with the collective bargaining agreement. We affirm.

The events which led to the filing of the original complaint are undisputed. KOH is engaged in the business of transporting heavy oil field equipment, including drilling derricks, to and from Alaska's North Slope. One of its employees, Dennis Amsbaugh, was involved in an accident while transporting an oil derrick. He immediately reported the accident by radio to his supervisor, but for reasons not apparent to this Court failed to mention that the derrick had not merely slid loose from its bolster, but had been knocked off the truck and onto the ground. When KOH learned of Amsbaugh's omission, it fired him for what it charged was dishonesty.

The union then instituted grievance proceedings on Amsbaugh's behalf. Pursuant to the collective bargaining agreement, the grievance proceeded through several tiers of dispute-resolution mechanisms. When the more informal of these failed, a Board of Arbitration, composed of four arbitrators, was convened. By its terms the collective bargaining agreement gave KOH and the union each the right to select two of the four arbitrators, so long as the nominees were not chosen "from among the Employers or managerial staff of a participant or party to the grievance being arbitrated." At the time the Board was convened, KOH objected to the union's choice of arbitrators on the grounds that its nominees, both of whom served as business representatives for the union, were "managerial staff" and so ineligible. This objection was overridden. The matter proceeded to arbitration and the Board deadlocked in a two-two split. The union then served KOH with notice of its intention of taking possible economic action, whereupon KOH commenced this suit. The collective bargaining agreement, in the event arbitration failed, provided that:

> "In the event the matter cannot be adjusted within twenty-four (24) hours from the date of the grievance hearing, the Union may take any economic action it deems necessary to settle the matter, providing the Employer shall be given twenty-four (24) hours notice of any economic action contemplated."

The complaint as originally drawn contained only two counts, the first relating to KOH's right to discharge Amsbaugh and the second to the propriety of business representatives sitting on the Board of Arbi-

---

* Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

tration. Both were limited to prayers for declaratory relief. Shortly after the complaint was filed, however, the union proceeded to call a work stoppage. KOH quickly negotiated a halt to the strike, agreeing to reinstate Amsbaugh with back pay provided the union would terminate the work stoppage. The pending lawsuit was not discussed and the trial judge expressly found that any intention KOH may have had of continuing to prosecute the action "had to be concealed." Nonetheless, KOH proceeded to amend its complaint. To the two counts for declaratory relief KOH added a claim for damages based on amounts paid Amsbaugh in back wages pursuant to the strike settlement, as well as a claim seeking a declaration that the appointment to the Board of Arbitration of an individual who had advocated Amsbaugh's cause during the earlier stages of the grievance proceedings was improper.

██ Both parties have briefed and argued this case as if it presented the question of whether economic action, when permitted by a collective bargaining agreement, divests the courts of jurisdiction under section 301 to entertain claims for damages or declaratory relief. See, e. g., *Associated General Contractors v. Illinois Conference of Teamsters,* 345 F.Supp. 1296 (S.D.Ill.1972), *aff'd,* 486 F.2d 972 (7th Cir. 1973). The issue here is properly limited, however, to the impact of the strike settlement agreement on the justiciability of KOH's cause. Indeed, the court in *Associated General Contractors* recognized that in many cases the incentive to settle an impending or ongoing strike would render moot an employer's claims for damages or declaratory relief. The decision of the District Court in that case was rendered after the case had been remanded by the Court of Appeals in an opinion which held that section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, prohibited the issuance of an injunction against a strike in the absence of a no-strike clause in a collective bargaining agreement. *Associated General Contractors v. Illinois Conference of Teamsters,* 454 F.2d 1324 (7th Cir. 1972). Faced with that decision, the District Court was forthright

in acknowledging that extra-judicial strike settlements might render the value of a cause of action for damages or declaratory relief illusory:

"If economic recourse is in fact resorted to and does in fact bring agreement in any dispute, there obviously will not be litigation, or any pending litigation presumably will be dismissed as settled when any such agreement is achieved; but neither of those circumstances can mean that, if the economic pressure does not bring agreement between parties on the meaning of a written collective agreement they already have mutually accepted, a court should or must refuse to construe the agreement for them at the instance of either party thereto or of an employee covered thereby."

*Associated General Contractors,* 345 F.Supp. at 1299. This Court is not unsympathetic to KOH's claim that, as a practical matter, it was forced to enter into a settlement with the union in order to halt the work stoppage, inasmuch as it apparently believed injunctive relief unavailable to it. The answer to KOH's dilemma, lies with the Congress and not with judicial repudiation of validly negotiated strike settlement agreements. See 29 U.S.C. § 173(d).

██ After a trial on the merits the District Court found that it was the manifest intention of the parties to settle, once and for all, the issue of KOH's right to discharge Amsbaugh. That finding, as one of fact, is binding on the Court of Appeals unless shown to have been clearly erroneous. See *Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002 (2d Cir. 1966); *Maryland Cas. Co. v. Cushing,* 171 F.2d 257 (7th Cir. 1948); cf. *Int'l Video Corp. v. Ampex Corp.,* 484 F.2d 634 (9th Cir. 1973). The record in this case plainly supports the conclusion reached by the District Court. From this it follows that dismissal of KOH's claims for damages was correct.

██ The situation differs somewhat with respect to the claims for declaratory relief. The question of whether the strike settlement agreement rendered those claims non-

justiciable depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Considerations of mootness figure importantly in this calculus, for it is the constitutional "duty of this Court . . . 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Oil, Chem. & Atomic Workers Local 8–6 v. Missouri,* 361 U.S. 363, 367, 80 S.Ct. 391, 394, 4 L.Ed.2d 373 (1960), quoting from *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895).

Applying these principles to the case at bar, it is clear that the strike settlement agreement rendered moot KOH's prayer for a declaration that it was within its rights under the collective bargaining agreement when it terminated Amsbaugh for dishonesty. KOH relinquished its claims on this point when it agreed to reinstate him with back pay in exchange for the union's termination of the work stoppage. A declaration of rights, while it might vindicate KOH's initial position, would not alter the position of the parties, for they have already agreed between themselves what that position will be. Also, the issue here posed is not one which is likely to recur. Compare *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). Under the circumstances KOH's prayer for declaratory relief with respect to its right to terminate Amsbaugh is non-justiciable. See *Oil, Chem. & Atomic Workers Local 8–6 v. Missouri,* 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *Harris v. Battle,* 348 U.S. 803, 75 S.Ct. 34, 99 L.Ed. 634 (1954) (per curiam); *Marden v. Int'l Ass'n of Machinists & Aerospace Workers,* 576 F.2d 576, 581–82 (5th Cir. 1978).

■ KOH's claims respecting the alleged bias of an arbitrator who had handled Amsbaugh's case during the early stages of the grievance proceedings may be vulnerable to the same analysis. The record contains no evidence that this practice had been resorted to by the union in the past, or that it would be likely to recur in the future. It is also clear that KOH did not object to the arbitrator on this ground at the time the Board of Arbitration was convened. The issue was therefore waived insofar as it was linked to Amsbaugh's termination. *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir. 1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972).

■ There remains KOH's prayer for a declaration that, under the collective bargaining agreement, business representatives as "managerial staff" of the union may not serve as arbitrators. The evidence at trial revealed that the union had pursued this practice in the past, and that it was the source of an ongoing dispute between the parties as to the meaning of the collective bargaining agreement. Unlike KOH's other claims, therefore, this court remained justiciable notwithstanding the settlement of the issue of Amsbaugh's termination. See *El Paso Bldg. & Const. Trades Council v. El Paso Chapter Associated Gen. Contractors,* 376 F.2d 797, 800 (5th Cir. 1967). In affirming the District Court's exercise of jurisdiction over this portion of KOH's complaint, it should be noted that this Court is not reaching the issue of the propriety of declaratory relief under section 301 in the face of an ongoing strike. Rather, it is simply reaffirming the long line of cases which have held that declaratory relief is ordinarily available in suits seeking a construction of an existing collective bargaining contract. See, e. g., *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455–56, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

■ Arbitration is a matter of contract, and the District Court was authorized to examine the past conduct and bargaining history of the parties in construing this arbitration clause. See *West Coast Telephone Co. v. Local No. 77, IBEW,* 431 F.2d

1219, 1221 n. 4 (9th Cir. 1970); *ACMAT Corp. v. Int'l Union of Operating Engineers,* 442 F.Supp. 772, 780 (D.Conn.1977); *New England Telephone & Telegraph Co. v. IBEW,* 402 F.Supp. 1032, 1037 (D.Mass. 1975). The testimony in the District Court conflicted in certain respects as to the prior positions of the parties on the appointment of business representatives. However, it does not clearly appear that KOH had objected to such appointments on every occasion that it was faced with a Board of Arbitration so composed, and the industry practice with respect to application of this identical clause in other contracts was clearly to allow such appointments. Accordingly, the District Court's judgment is affirmed in all respects.